**Dr. Henry Lewis STOUTZ, III and Mrs. Fancher Marie Stoutz Coe, as Transferees of the Estate of Ruth Harvey Fancher Stoutz**

v.

**UNITED STATES of America.**
**Civ. A. No. 68-1637.**

United States District Court,
E. D. Louisiana,
New Orleans Division.
Sept. 19, 1970.

Louis B. Graham, of Graham & Graham, New Orleans, La., for plaintiffs.

Louis C. LaCour, U. S. Atty., Joan Elaine Chauvin, Asst. U. S. Atty., Helen Marmoll, U. S. Dept. of Justice, for the United States.

CHRISTENBERRY, District Judge.

This action comes before this court upon a full stipulation and the briefs of counsel. Trial by jury or other evidentiary hearing has been waived. Upon a consideration of the stipulation and briefs, the court finds as follows:

## FINDINGS OF FACT

1. This is an action brought by Dr. Henry Lewis Stoutz, III and Mrs. Fancher Marie Stoutz Coe as transferees of the Estate of Ruth Harvey Fancher Stoutz, their mother. Plaintiffs are Mrs. Stoutz's only children, legal heirs and legatees.

2. Plaintiffs seek to recover from the defendant United States of America $11,-543.98 in federal estate taxes, $1,300.18 in assessed interest, statutory interest as allowed by law, and attorneys' fees and costs.[1]

3. Mrs. Stoutz died on January 15, 1965, domiciled in New Orleans, Louisiana. She left a holographic Last Will and Testament, which reads as follows:

"This is my latest will and testament. I leave all of my possessions to my two children, Dr. Henry Lewis Stoutz, III, and Fancher Marie Stoutz Coe (Mrs. W. J. Coe) to share and share alike."

4. On April 16, 1966, plaintiffs filed the federal estate tax return and paid the estate taxes shown due thereon.

5. Thereafter, the Commissioner of Internal Revenue made a timely transferee assessment against plaintiffs in the total amount of $12,844.10 in estate taxes and assessed interest. Plaintiffs paid this assessment in equal proportions on or about June 26, 1968.

6. On June 25, 1968, plaintiffs had filed a claim for refund of the $12,844.10 assessment, plus statutory interest as allowed by law, plus $3,000 in attorneys' fees. That claim states:

"I.R.S. has contended that the children of the deceased could not elect the alternate valuation date of one year after death, but were compelled to evaluate as of date of judgment of possession, and that a savings account of the surviving spouse should be presumed as community. These contentions are in

---

1. By Minute Entry dated June 30, 1970, the defendant Chester A. Usry, District Director, was dismissed as a party defendant for lack of jurisdiction and the United States of America substituted in his stead.

error as per our letter of 21 September, 67, copy attached."

The refund claimed was made a part of the Stipulation by incorporation by reference of the copy of same attached to the Complaint as Exhibit "C." The parties have not made the letter of September 21, 1967, referred to in the refund claim a part of the Stipulation, but it too is attached to the Complaint and is marked Exhibit "B." The letter is a detailed explanation and discussion of the two contentions set forth in the refund claim. The facts and claims set forth in the letter and claim for refund are sufficient to apprise the Commissioner of plaintiffs' contentions relating to the valuation date issue and relating to the issue concerning the community balance in the savings account. Such facts and claims are not sufficient to apprise the Commissioner of any other issues.

7. By certified letters dated July 18, 1968, the Commissioner of Internal Revenue denied the claim.

8. This action followed on October 1, 1968.

9. In this action, plaintiffs have raised three basic questions, one by Supplemental Stipulation:

(a) First, plaintiffs contend that they are entitled to value certain shares of the Provident Life & Accident Insurance Company of Chattanooga, Tennessee, as of one year after the decedent's death. Defendant agrees that plaintiffs are entitled to use an alternative valuation date other than the date of death, but defendant says the alternative valuation date is the date the probate court entered the Judgment of Possession. This issue presents a novel question of the effect, for federal estate tax purposes, of a Louisiana Judgment of Possession.

(b) Next, plaintiffs maintain that a $3,572.99 date-of-death balance in a Globe Homestead & Savings Association savings account constituted the separate property of decedent's husband and, therefore, is not includable to any extent in the decedent's estate. Defendant, however, says that the money represents community property, half of which is includable in the decedent's estate for federal estate tax purposes. Plaintiff also maintains that, if the date-of-death balance is community property, then the community estate owes the husband's separate estate for the use of his separate funds. Defendant responds to this latter contention by asserting that this court has no jurisdiction to consider the issue because of a variance from the refund claim.

(c) By Supplemental Stipulation, a third issue has been raised as to whether plaintiffs are entitled to reimbursement from defendant for attorneys' fees expended in prosecuting this action. Defendant contends that plaintiffs are entitled only to a deduction of reasonable attorneys' fees, not reimbursement of attorneys' fees. Both sides have asked this court to set the amount of attorneys' fees which would be reasonable.

Each of the three issues will be taken up in the order set forth above.

### (a) Valuation Date Issue

10. The succession proceedings of decedent were instituted in the Civil District Court for the Parish of Orleans and consisted in an application to open bank safety deposit boxes and a petition by plaintiffs here for possession. No executor was appointed or qualified, and the succession was accepted without benefit of inventory.

11. Upon the opening of the bank safety deposit boxes, 1580 shares of Provident Life & Accident Insurance Company of Chattanooga, Tennessee, were listed as the separate property of decedent.

12. The probate court recognized plaintiffs as the sole children and legatees of decedent and placed them in pos-

session in full ownership by ex parte judgment rendered February 23, 1965.

13. At decedent's death, on January 15, 1965, the above-mentioned stock had a total value of $234,360.00. By February 23, 1965, the date of the Judgment of Possession, the stock had reduced in value to $215,670.00; and by January 15, 1966, one year subsequent to decedent's death, it had reduced in value even further to $176,170.00.

14. In filing the federal estate tax return on April 16, 1966, plaintiffs reported the stock and used the $176,170.00 value as of one year after decedent's death. Upon audit, the Commissioner of Internal Revenue determined that the stock should be valued at $215,670.00, the value of the stock as of the date the Judgment of Possession was rendered and signed.

15. The parties do not disagree as to the value of the stock on each of the two critical dates, but only as to which date should govern. It has also been stipulated that the plaintiffs had not disposed of the stock after receiving possession until more than one year after decedent's death.

(b) *Bank Account Issue*

16. As of January 15, 1965, the date of decedent's death, there was a $3,572.-99 balance in a savings account with the Globe Homestead & Savings Association.

17. Upon audit, the Commissioner of Internal Revenue determined that half the balance in the above-mentioned account was includable in decedent's estate.

18. The above-mentioned account, numbered 4837, was in the name of both decedent and her surviving husband.

19. Henry L. Stoutz, Jr., husband of decedent, received a gift from his mother, Mrs. Amanda Marie Joubert Stoutz, in a sum in excess of $10,000. This gift constituted his separate property.

20. A total of $10,000 of the above-mentioned gift was deposited in the Globe Homstead & Savings Association account No. 4837 on July 17, 1959.

21. From the date the account was opened with this $10,000 share payment, until the date-of-death balance was withdrawn on March 4, 1965, the activity in the account was as follows:

| Date | Dividend | Withdrawal | Share Payment | Balance |
|------|----------|------------|---------------|---------|
| 7/17/59 | | | $10,000.00 | $10,000.00 |
| 12/30/59 | $182.22 | | | 10,182.22 |
| 6/30/60 | 203.64 | | | 10,385.86 |
| 7/5/60 | | $7,500.00 | | 2,885.86 |
| 12/30/60 | 57.72 | | | 2,943.58 |
| 6/30/61 | 58.87 | | | 3,002.45 |
| 11/7/61 | | | 2,500.00 | 5,502.45 |
| 12/29/61 | 75.05 | | | 5,577.50 |
| 6/29/62 | 125.49 | | | 5,702.99 |
| 7/13/62 | | 3,030.00 | | 2,672.99 |
| 7/17/62 | | | 1,000.00 | 3,672.99 |
| 7/23/62 | | 1,100.00 | | 2,572.99 |
| 10/23/62 | | | 1,000.00 | 3,572.99 |
| 12/28/62 | 66.39 | | | 3,639.38 |
| 7/28/63 | 81.89 | | | 3,721.27 |
| 7/8/63 | | 143.28 | | 3,572.99 |
| 12/27/63 | 80.39 | | | 3,653.38 |
| 7/24/64 | | 80.39 | | 3,572.99 |
| 7/29/64 | 80.39 | | | 3,653.38 |
| 8/13/64 | | 80.39 | | 3,572.99 |
| 12/30/64 | 80.39 | | | 3,653.38 |
| 12/30/64 | | 80.39 | | 3,572.99 |
| 3/4/65 | | 3,572.99 | | –0– |

22. Upon brief, plaintiffs conceded that the $7,500 withdrawal on July 5, 1960, came out of the original $10,000 share payment and the court so finds.

23. The court finds that the remaining $2,500 of the original $10,000 share payment became commingled with the sum of $4,500 in subsequent community share payments and lost their identity as separate funds. The community funds commingled with the separate funds were not an insignificant portion of the total account, whether the community funds be measured against the $2,500 remaining from the original $10,000 share payment or against the original share payment itself.

### (c) *Attorneys' Fees*

24. On their claim for refund, plaintiffs asked for $3,000 in attorneys' fees. In the complaint, plaintiffs seek $5,000 in attorneys' fees.

25. In handling this matter before the Internal Revenue Service, plaintiffs' attorneys held various consultations with the estate tax examiner; prepared the letter attached to the Complaint as Exhibit "B"; attended a subsequent conference with the Internal Revenue Service; transmitted plaintiffs' payment of the assessment; and prepared the refund claim.

26. Before this court, plaintiffs' attorneys prepared the complaint and filed this action; worked with the Government trial attorney in preparing the stipulation, which presumably involved some negotiation and correspondence; prepared and filed a memorandum of authorities and a supplemental memorandum of authorities on behalf of plaintiffs.

27. In their main memorandum of authorities, plaintiffs submit that if they are successful in their claim, then a $5,000 attorneys' fee is justified.

28. Based on the amount in controversy and the legal services rendered by plaintiffs' attorneys, I find that a reasonable attorneys' fee in this case is $3,000.

### CONCLUSIONS OF LAW

1. This court has jurisdiction over this action under Section 1346(a) (1) of the Judicial Code (28 U.S.C. 1964 ed., Sec. 1346(a) (1)).

### (a) *Valuation Date Issue*

2. Section 2031 of the 1954 Internal Revenue Code (26 U.S.C. 1964 ed., Sec. 2031) [2] provides for the valuation of a gross estate for federal estate tax purposes as of the date of death.

3. Section 2032 provides an exception to the general rule embodied in Section 2031 and allows the election of an alternate valuation date. If the alternate valuation date is chosen, all property "distributed, sold, exchanged, or otherwise disposed of" within one year of death is to be valued at the date of disposition, whereas all other property is to be valued as of one year after death. Any interest or estate affected by a mere lapse of time is to be valued as of the date of death.

4. Section 20.2032–1(c) (1) of the Treasury Regulations on Estate Tax (26 C.F.R., Sec. 20.2032–1) defines the statutory phrase "distributed, sold, exchanged, or otherwise disposed of" as comprehending "all possible ways by which property ceases to form a part of the gross estate."

5. Under Louisiana law, the seizin of a succession rests in some individual at all times. Seizin never lapses. Louisiana Civil Code, Arts. 940–942.

6. The right of possession automatically provided by Louisiana law, however, is held in suspense until the heir decides to accept or reject it. If he accepts, the law views him as having succeeded at the moment of death. If he rejects, he is considered to have never succeeded. Louisiana Civil Code, Art. 946.

7. The heir's acceptance may be tacit or express, and with or without the benefit of inventory. Louisiana Civil Code, Arts. 988–990, 1017, 1018, 1032, and 1033.

2. All statutory references are to the 1954 Internal Revenue Code unless otherwise indicated.

■ 8. Plaintiffs' express acceptance of the succession without benefit of inventory rendered them liable for decedent's debts as if they themselves had incurred them. Louisiana Civil Code, Arts. 1422–1432; Guillory v. Desormeaux, 166 So.2d 575 (La.App. 3rd Cir. 1964); Succession of Hoffman, 126 So. 2d 774 (La.App. 4th Cir. 1961); Robinson v. Dunson, 65 So.2d 643 (La.App. 1st Cir. 1953).

■ 9. When the Louisiana probate court exercised the discretion granted to it by Article 3031 of the Louisiana Code of Civil Procedure and entered an ex parte Judgment of Possession, it converted plaintiffs' right of possession into a fact of possession. Louisiana Code of Civil Procedure, Art. 3062.

10. By the entry of the Judgment of Possession, the probate court terminated the succession. Key v. Salley, 218 La. 922, 51 So.2d 390 (1951); Vordenbaumen v. Gray, 189 So. 342 (La.App. 2nd Cir. 1939); Mahoney v. Perkins, 166 La. 730, 117 So. 810 (1928).

■ 11. The method of administration of the succession chosen by plaintiffs had the legal effect of ending the succession. It follows, therefore, that the assets were removed from the decedent's gross estate when the probate court entered the Judgment of Possession. Plaintiffs' acceptance of the succession without benefit of inventory gave them the right to commingle their inheritance with their personal assets, but concomitantly required them to accept responsibility for decedent's debts. Louisiana Civil Code, Art. 1013. See, also, Miller, Judgment of Possession, 35 Tul.L.Rev. 567 (1961).

■ 12. Since the method of administration chosen by plaintiffs removed the assets from the estate, the entry of the Judgment of Possession which accomplished that removal set the alternate valuation date. The removal of assets from an estate by means of a Louisiana Judgment of Possession constitutes a distribution or other disposal of such assets within the meaning of Section 2032.

Hertsche v. United States, 244 F.Supp. 347 (D.Or.1965), affirmed per curiam, 366 F.2d 93 (C.A.9th, 1966); Estate of Prell v. Commissioner of Internal Revenue, 48 T.C. 67 (1967); Cf. Rev.Rul. 66–272, 1966 2 Cum.Bull. 432; Rev.Rul. 57–495, 1957 2 Cum.Bull. 616. See, also, 2 Mertens, Law of Federal Gift and Estate Taxation, Sec. 12:02, p. 8, n. 12 (1959).

(b) *Bank Account Issue*

13. Section 2033 requires that the value of all property in which the decedent had an interest at the time of death be included in the gross estate to the extent of that interest.

14. Article 2405 of the Louisiana Civil Code creates a presumption that all effects owned by a husband and wife at dissolution of marriage constitute community property "unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited."

■ 15. The commingling of separate and community funds in a bank account destroys the identity of the separate funds. Howard v. United States, 40 F.Supp. 697 (E.D.La.1941), modified on other grounds, 125 F.2d 986 (C.A. 5th, 1942).

16. The separate character of money commingled with community funds remains intact only if the amount of community funds commingled constitutes an insignificant percentage of the total fund. Gregory v. Gregory, 223 So.2d 238 (La.App. 3rd Cir. 1969); Succession of Land, 212 La. 103, 31 So.2d 609 (1947).

■ 17. Accordingly, the date-of-death balance in the Globe Homestead & Savings account No. 4837 constituted community property and one half thereof is includable in decedent's gross estate for federal estate tax purposes, pursuant to Section 2033.

■ 18. The United States of America, as the sovereign, is immune from suit unless it consents to be sued,

and the terms of that consent define the court's jurisdiction to entertain the suit. See, United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), and cases there cited.

■ 19. A suit for the recovery of internal revenue taxes may be maintained against the United States only after a refund claim has been filed which sets forth "in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treasury Regulations on Procedure and Administration, Section 301.6402–2 (26 C.F.R., Sec. 301.6402–2); Section 7422 (a).

■ 20. This court lacks jurisdiction to consider plaintiffs' alternative contention, relating to the bank account, that the community estate owes the husband's separate estate for the use of his separate funds, since such contention was never set forth in the claim for refund filed by the plaintiffs. Accordingly, the court has not considered the merits of this alternative contention.[3]

### (c) Attorneys' Fees

■ 21. Plaintiffs are entitled to a deduction for reasonable attorneys' fees. Estate Tax Regulations, Section 20.2053 (c) (2) (26 C.F.R., Sec. 20.2053).

22. Section 2412 of the Judicial Code (28 U.S.C. 1964 ed., Sec. 2412) permits a court to award costs to the prevailing party in a suit by or against the United States, but specifically excludes the fees and expenses of attorneys from the category of costs that may be awarded. Thus, even if plaintiffs had prevailed, they would not be entitled to an award for actual reimbursement of attorneys' fees. Obviously, they are not entitled to such an award here.

23. The court finds that the plaintiffs are entitled to a deduction of attor-

neys' fees in the amount of $3000.00, which amount the court finds to be reasonable. Altendorf v. United States, 228 F.Supp. 969 (D.N.D.1964); Gordon v. United States, 163 F.Supp. 542 (W.D. Mo.1958).

Judgment will be entered pursuant to the above Findings of Fact and Conclusions of Law.

---

3. By way of passing, it is noted that plaintiffs have cited no authority in support of this alternative contention, but have simply stated in their brief that had they listed the account as a community asset

on the federal estate tax return, they would have claimed reimbursement from decedent's estate for the $10,000 share payment less half of the date-of-death balance.