254 So.2d 79 (1971)
John J. RAMP, Jr., et al.
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al.
No. 4363.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 1971.
Rehearings Denied November 8, 1971.
Writs Granted December 7, 1971.
*80 William F. Wessel, New Orleans, for appellants.
H. Martin Hunley, Jr., of Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, for defendants-appellees.
Before REGAN, LEMMON and STOULIG, JJ.
LEMMON, Judge.
Plaintiffs, four of the five children of John J. Ramp, employed the defendant attorneys to represent them in connection with their rights and interest in the succession of their father. Alleging that they sustained certain damages because the attorneys negligently handled this representation, plaintiffs sued the attorneys and their professional liability insurer. The trial court dismissed the suit, and plaintiffs appealed.
Plaintiffs' father died on October 10, 1965 and was survived by his third wife, by one child of his first marriage and by four children of his second marriage, the plaintiffs in this case. By will executed eight days before his death, the decedent attempted to give the usufruct of all of his property to the surviving spouse, whom he also named as executrix. Additionally, he bequeathed the disposable portion of his estate to certain named legatees and the forced portion to "all of my children, share and share alike, subject to the usufruct in favor of my wife". (Emphasis supplied)
When the surviving spouse qualified as testamentary executrix of the succession, plaintiffs contacted the law firm of Plotkin, Nelkin and Alvarez regarding their rights in the succession. A suit to annul the will was filed on behalf of plaintiffs, primarily on the grounds of testamentary incapacity. Subsequently, plaintiffs and the executrix entered into a compromise agreement, which, after reciting the facts of the petition of nullity, the answer thereto, and the delays and expense caused by the pending litigation, bound the plaintiffs not only to dismiss the nullity action, but also to accept the succession in accordance with the terms and conditions of the will, and to file no further opposition to the will on any grounds whatsoever. As consideration for executing the compromise, plaintiffs received from the succession the total sum of $1,000.00, from which they paid a $200.00 fee to their attorneys. (The detailed descriptive list estimated the value of decedent's separate property at $57,000.00 and of his share of the community property at almost $24,000.00).
It is the advice to accept the compromise agreement that plaintiffs now primarily assign as negligence on the part of the attorneys.
To complete the history of the succession litigation, the trial court approved the compromise and dismissed the nullity suit. However, when a rule was filed for plaintiffs to show cause why they should not accept the succession in accordance with the will, plaintiffs through a new attorney opposed the rule, urging that the usufruct imposed by the will impinged their legitime, in contravention of LSA-C.C. art. 1493.
*81 The trial court, after hearing evidence on this rule and on other rules involving removal of the executrix, ordered that plaintiffs be placed in possession of their forced portion subject to the usufruct, under the terms of the will and in accordance with the provisions of the compromise, and further ordered that the child of the first marriage (who did not execute the compromise) be placed in possession of her forced portion in full ownership.
On plaintiffs' appeal, this court reversed the judgment of the trial court as to plaintiffs' forced portion being subject to the usufruct. See Succession of Ramp, La. App., 205 So.2d 86. The Supreme Court affirmed the decision of the Court of Appeal on different grounds, holding that the compromise must be reformed in order to effect the real intention of the parties to compromise only the nullity action. See 252 La. 660, 212 So.2d 419. The court viewed the compromise as one by the succession (through the executrix in her representative capacity) of a claim by some of the forced heirs, which therefore was limited to a dismissal of the nullity action, rather than as a compromise between a legatee (the executrix in her individual capacity) and some of the heirs.
While the previous litigation was on appeal, plaintiffs filed the present negligence suit, claiming primarily as damages the loss of their legitime in full ownership, the fee paid to defendants, and the fee of the attorney employed to correct defendants' error. After plaintiffs' rights as forced heirs were recognized on appellate review of the succession proceedings, defendants resisted the present suit on the grounds that (1) there was no negligence and that (2) when the correct legal result was reached and plaintiffs' rights vindicated, any concomitant negligence on the part of the attorney was legally insignificant.

NEGLIGENCE
Plaintiffs originally sought representation after their father's death from Steven R. Plotkin, who, because his practice was restricted to personal injury work, referred them to his then partner, Joseph Nelkin. Because of plaintiffs' poor relationship with their stepmother and the nature of their father's final illness, they felt that the spouse had influenced their father to execute a will to deprive them of their inheritance. Although they had not yet seen the will, they sought advice on how to obtain their rightful shares in the estate.
A second meeting was set up shortly thereafter, at which plaintiffs were to bring additional evidence of their father's condition at the time of execution of the will. In the meantime Nelkin reviewed the will filed in the succession proceeding. At this and perhaps other meetings the testamentary incapacity of the father was discussed, and although no conclusion was reached, Nelkin sought to immediately protect plaintiffs' rights by filing a petition to annul the will based on lack of testamentary capacity.
Nelkin insisted that he was at all times fully aware of plaintiffs' rights as forced heirs, but correctly observed that if the attack on the will proved successful, the attempted usufruct would automatically fall, and plaintiffs (and their half-sister) would be the only heirs to the estate. He therefore planned to proceed in stages, it being necessary to proceed to a second stage of asserting forced heirship only if the first attack on the will failed. He further insisted that he informed his clients of his plans to handle the attack on a "one step at a time" basis, although he readily admits that he never specifically informed them of their rights as forced heirs, although he did attempt to explain "usufruct" in response to questions.
After Nelkin interviewed the attending physician and participated in depositions of his clients taken by the attorney for the succession, he became convinced that the pending attack on the will had little chance of success. At a meeting following the depositions held to discuss a lease of succession property, the succession attorney *82 suggested the possibility of a compromise. Nelkin discussed the proposed settlement with his clients, but now insists that he only meant to settle the pending nullity suit, although the clients insist that they understood at all times that they were compromising all of their rights.[1] Again the issue of forced heirship was never raised.
Before the compromise agreement was drafted by the succession attorney, Plotkin and Nelkin dissolved their partnership, the latter establishing a new office. When he received the draft of the agreement, Nelkin reviewed the instrument and forwarded it to Plotkin with the recommendation that the clients execute it. Plotkin cursorily read the document and obtained the signatures, believing that only the pending attack was being compromised.
Subsequently, the attorney for the succession drafted a petition for possession, which provided for plaintiffs' forced portion to be accepted subject to the usufruct. Plotkin wrote to the plaintiffs, advising them to execute the petition and further advising that he had reviewed the pleadings and found them in order. On receipt of this letter plaintiffs consulted the present attorney, who informed them for the first time of their rights as forced heirs. Plaintiffs now urge that, had they known of these rights, they never would have agreed to the compromise which they believed foreclosed all of their rights to attack the will.[2] They insist that Nelkin continually advised that the attack on the will for incapacity was the only way to obtain their shares in the estate until their stepmother died.
The trial court concluded that a standard of perfection not contemplated in the practice of law would be required to hold an attorney negligent when his advice on the interpretation of a contract resulted in litigation, especially where his client ultimately prevailed in the litigation.
We reject this as the standard of care to be applied in a legal malpractice case. Certainly, an attorney must be free to render his opinion and advice on the interpretation of a contract and not be liable for errors of judgment if litigation ensues. However, this opinion and advice cannot be rendered carelessly, in deviation from accepted standards of the profession, but must be the considered conclusion of the attorney.
When an attorney at law undertakes litigation on behalf of a client, he impliedly represents that he possesses the requisite degree of learning, skill and ability necessary for the undertaking, and he further warrants that he will exercise reasonable care and diligence in the handling of the matter. When the attorney fails to exercise that degree of care, skill and diligence which is commonly possessed and exercised by practicing attorneys in his jurisdiction, he is liable to his client for any damages resulting from that failure. See 45 A.L.R.2d 5; Breedlove v. Turner, 9 Mart. (O.S.) 353 (1821); Thompson v. Lobdell, 7 Rob. 369 (1844); Spiller v. Davidson, 4 La.Ann. 171 (1849); King v. Fourchy, 47 La.Ann. 354, 16 So. 814 (1895); Heffner v. Wise, 51 La.Ann. 1637, 26 So. 415 (1899).
The pertinent paragraphs of the compromise agreement are:
"2.) Plaintiffs agree, and do hereby bind themselves to accept the succession of their father in accordance with the terms and conditions stated in his last will and testament, upon the termination of the administration of the estate.

*83 "3.) Plaintiffs agree, and do hereby bind themselves to file no further opposition to or contest of decedent's will on any grounds whatsoever."
Forced heirship is one of the most basic concepts of the legal system of this state, and an attorney should possess such reasonable knowledge of this concept as will enable him to perform the duties he undertakes. It is obvious that the defendant lawyers in this case either missed the forced heirship issue in their interpretation of the provisions of the will (which Nelkin insists is not the case), or, if aware of the forced heirship rights, improperly advised their clients to sign an instrument which clearly compromised these rights in unambiguous terms or which at best was suggestive of litigation as to the future assertion of these rights in the succession proceedings.
In either case, we believe that the conduct of the defendant attorneys was negligent when the proper standard of due care is applied.

DAMAGES
Generally, a client who sues his attorney for professional negligence has the difficult tasks of (1) proving that the original action would have resulted in a favorable decision except for the alleged misconduct and (2) proving the negligence itself. The client therefore must usually prove two cases in a single proceeding.
In the present case the original succession action did in fact result in a decision favorable to plaintiffs on appellate review. We now hold in this case that the plaintiffs have also proved the negligence of the attorneys.
As to damages resulting from that negligence, the major elementthe loss of their forced portion in full ownership, valued in the petition in excess of $43,000.00was recovered on appellate review of the succession proceedings. However, plaintiffs suffered and are entitled to recover damages in connection with the additional costs of upsetting the compromise. These included the additional cost of resisting the judicial enforcement of the compromise in the trial court, of appealing and obtaining reversal of the adverse trial court judgment, and of appearing and arguing before the Supreme Court when certiorari was granted to the executrix.
Plaintiffs' present attorney accepted employment in the succession proceedings on a contingency basis, since the plaintiffs were unable to afford a quoted legal fee based on anticipated time and effort requirements. However, plaintiffs now ask that we accept the fee actually paid in the succession litigation as the measure of damages in this case. This we cannot do, since we believe that the proper measure of damages is the reasonable cost of repairing the damage caused by the negligence. The fee assessed should be proportionate to the work involved in upsetting the compromise, not to the contingent chances of recovery. While the fee in this case is reasonable as a contingent fee, which is an accepted basis for professional compensation, it is not reasonable as the proper measure of damages.
The present attorney uncovered additional succession property and performed additional services in securing plaintiffs' shares in the succession, and this additional property and services are properly considered in calculating the amount of the contingent fee. But these services were not required to correct defendants' negligence and cannot be considered in assessing the monetary amount of their liability.
We set the sum of $2,250.00 as a reasonable fee for services required and rendered to repair the damages incurred as a direct consequence of the negligence in this case, and the defendant attorneys and their insurer are liable to plaintiffs in this amount.
Additionally, the defendant attorneys should reimburse plaintiffs the fee of *84 $200.00 charged and collected in connection with their professional services.
We agree with the trial court that the loss in value of the succession property between the time of the filing of the descriptive list and the ultimate sale at public auction was not adequately proved, either as to amount or as to proximate causation. Other claims involving mismanagement should properly have been directed against the succession representatives.
For the reasons assigned, the judgment of the trial court is reversed, and judgment is rendered in favor of the plaintiffs, John J. Ramp, Jr., Salvador A. Ramp, Mrs. Margaret Ramp Rossi, and Mrs. Delphine Ramp Puderer, and against the defendants, St. Paul Fire and Marine Insurance Company, Steven R. Plotkin and Joseph Nelkin, in the full sum of $2,250.00 and further against the defendants, Steven R. Plotkin and Joseph Nelkin, in the full sum of $200.00, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings.
Reversed and rendered.

ON APPLICATION FOR REHEARING
PER CURIAM.
On application for rehearing, it is urged that attorney's fees are recoverable as damages only when provided by statute or contract.
Attorney's fees in this case were awarded, not as a fee for the prosecution of the plaintiffs' claim, but simply as an item of expense which plaintiffs incurred as a result of defendants' negligence. The fee was not in addition to the damages awarded, but is actually an item of the damages suffered. Plaintiffs here are awarded only their actual damages, and must thereafter compensate their attorney as in any other negligence action.
As to negligence, defendants also urge that they simply interpreted an instrument, and the trial court, this court and the Supreme Court reached three different conclusions as to that interpretation in the succession proceedings. They therefore argue that it is too high a standard to place on attorneys to advise their clients so that all courts of the state would agree with the attorney's interpretation. In effect, applicants argue that the trial judge (not the attorneys) interpreted the instrument incorrectly, and this error of interpretation was corrected by the Supreme Court.
We disagree. This court and the Supreme Court did not interpret the instrument at all, but the Supreme Court rather reformed the instrument, which was clearly and unambiguously worded and was not subject to any other interpretation than that given by the trial court that the clients fully compromised their rights as forced heirs.
The breach of the attorney's duty of care occurred when they made reformation of the instrument necessary by improperly advising their clients to sign an agreement which clearly infringed upon their rights as forced heirs. Only after the negligence occurred was it necessary to upset the compromise by proceedings first in the trial court and then on appeal. While the trial court may have erred in result, the matter would never have been presented to that court but for the negligence of the attorneys.
NOTES
[1] It was on the basis of plaintiffs' full understanding of the clear and unambiguous terms of the compromise that the trial court upheld the validity of that agreement in the succession proceedings.
[2] The consideration of $1,000.00 for the compromise was insignificant compared to the value of the usufruct, which they agreed not to contest.