Edgar D. SMITH and Hugh E. Smith, both individually and as representatives of the Estate of Rose Champlin Heyer

v.

ST. PAUL FIRE & MARINE INSUR-ANCE COMPANY et al.

Civ. A. No. 71–121.

United States District Court
M. D. Louisiana.

June 22, 1972.

Wendell G. Lindsay, Jr., George, Lindsay & Seago, Ltd., Baton Rouge, La., for plaintiffs.

Donald S. Zuber, Seale, Smith & Phelps, Baton Rouge, La., for defendants.

E. GORDON WEST, District Judge:

Rose Champlin Heyer, a resident of Louisiana, died on April 21, 1969. The plaintiffs, who are the children and heirs of Mrs. Heyer, retained the defendants, Dalton J. Barranger, Esq., and his law firm, Barranger, Barranger & Jones, to handle the succession. The defendant St. Paul Fire & Marine Insurance Company is the professional liability insurer of Mr. Barranger and his law firm. The plaintiffs are citizens of Arkansas and Texas, and the defendants are citizens of the State of Louisiana. An amount in excess of $10,000 is claimed by the plaintiffs, and hence diversity jurisdiction is present. 28 U.S. C.A. § 1332. Defendants have filed a motion for summary judgment which is now before the Court. The plaintiffs oppose the motion first on the grounds that there are material issues of fact involved and that thus the case is not one for summary judgment, and secondly, it is opposed on the merits. After hearing arguments of counsel, and after due consideration of the record in this case, it is the opinion of this Court that the de-

fendants are entitled to the summary judgment which they seek.

Plaintiffs' claim for damages in the amount of $30,000 involves what they allege to be incompetent legal advice given them by the defendant attorneys in the course of handling the succession of their mother, Mrs. Heyer. Hereafter, when in the course of this opinion the Court refers to "defendants," such reference is made only to the defendant attorneys unless the contrary is indicated. Plaintiffs contend that the defendants' misinterpretation of the law resulted in the plaintiffs being forced to use a higher valuation of the decedent's estate for Federal estate tax purposes than would have been the case had the defendants properly interpreted the applicable Federal Tax Regulations. Defendants contend that there was no prior jurisprudential interpretation of the regulation in question, and that the interpretation placed on the regulation by them was a matter of professional judgment, arrived at only after the exercise of that degree of care, skill and diligence commonly possessed by practicing attorneys in this area.

On July 7, 1969, some eleven weeks after decedent's death, defendants petitioned the Court for and obtained a Judgment of Possession, placing the plaintiffs in possession of their mother's estate, without administration. Subsequently, the Internal Revenue Service informed defendants that in view of the Judgment of Possession, the alternate date for valuation of the estate of the deceased for Federal estate tax purposes would be July 7, 1969, the date of the Judgment of Possession, instead of April 21, 1970, one year after the death of the decedent, as would have been the case had no Judgment of Possession been obtained. The bulk of the property belonging to the estate was securities which declined in value between July 7, 1969 and April 21, 1970. In view of the ruling of the Internal Revenue Service, plaintiffs were prohibited from taking this decline in value into consideration for estate tax purposes, and instead had to pay Federal estate taxes based upon the higher value of the securities as of July 7, 1969.

The facts are not in dispute. Plaintiffs allege that the defendants were specifically asked whether or not the putting in possession by order of Court would affect their possible use of April 21, 1970 as an alternate date for valuation of the securities, and that defendants replied in the negative. Defendants do not deny this assertion. Plaintiffs allege that had they been permitted to use April 21, 1970 as an alternate valuation date, their estate tax would have been considerably less. Defendants do not deny this assertion. Plaintiffs allege that defendants' interpretation of the law was not upheld by the Internal Revenue Service or by the Courts, and that consequently plaintiffs had to pay higher taxes than they would have paid had defendants' interpretation of the law been upheld. Defendants do not deny this allegation. Plaintiffs contend that the defendants failed to exercise that degree of skill and good judgment required of a practicing attorney under similar circumstances, and that thus, as a matter of law, the defendants were guilty of malpractice causing damage to the plaintiffs. Defendants deny this assertion. Affidavits have been filed in the record by both sides setting forth the views and opinions of other practicing attorneys. These affidavits simply show that reputable attorneys differ in their opinion as to whether or not the advice given by the defendants in this case was a reasonable interpretation of the law as it stood on July 7, 1969. The facts are not in dispute. The fact is that some think that the advice was sound, while others think that it was not. The only dispute is over the question of whether or not, given these facts, as a legal matter, the advice which the defendants gave to the plaintiffs under the circumstances was so patently wrong as to convict the defendants of malpractice and thus make them responsive in damages to the plaintiffs. We think that it was not.

Both sides agree that the proper standard to use when deciding a legal malpractice suit in Louisiana is enunciated in Ramp v. St. Paul Fire and Marine Insurance Company, 254 So.2d 79 (La.App.1971):

"Certainly, an attorney must be free to render his opinion and advice on the interpretation of a contract and not be liable for errors of judgment if litigation ensues. However, this opinion and advice cannot be rendered carelessly, in deviation from accepted standards of the profession, but must be the considered conclusion of the attorney.

"When an attorney at law undertakes litigation on behalf of a client, he impliedly represents that he possesses the requisite degree of learning, skill and ability necessary for the undertaking, and he further warrants that he will exercise reasonable care and diligence in the handling of the matter. When the attorney fails to exercise that degree of care, skill and diligence which is commonly possessed and exercised by practicing attorneys in his jurisdiction, he is liable to his client for any damages resulting from that failure." 254 So.2d at 82.

The regulation in question is Federal Tax Regulations § 20.2032–1, which states, in pertinent part, as follows:

"(a) In general * * *

"(1) Any property distributed, sold, exchanged, or otherwise disposed of within one year after the decedent's death is valued as of the date on which it is first distributed, sold, exchanged, or otherwise disposed of;

"(2) Any property not distributed, sold, exchanged, or otherwise disposed of within one year after the decedent's death is valued as of the date one year after the date of the decedent's death; * * *

"(c) Meaning of 'distributed, sold, exchanged, or otherwise disposed of'. (1) The phrase 'distributed, sold, exchanged, or otherwise disposed of'

comprehends all possible ways by which property ceases to form a part of the gross estate. * * * The term does not, however, extend to transactions which are mere changes in form. * * *

"(2) Property may be 'distributed' either by the executor, or by a trustee of property included in the gross estate under sections 2035 through 2038, or section 2041. Property is considered as 'distributed' upon the first to occur of the following:

"(i) The entry of an order or decree of distribution, if the order or decree subsequently becomes final;

"(ii) The segregation or separation of the property from the estate or trust so that it becomes unqualifiedly subject to the demand or disposition of the distributee; or

"(iii) The actual paying over or delivery of the property to the distributee."

Defendants take the position that their decision to obtain a Judgment of Possession was, at most, and only in hind sight, an error of judgment on a question which had never been decided by either the Internal Revenue Service or by the Courts, namely, whether or not the entry of a Judgment of Possession would cause the alternate valuation date to be set at the date when such action was taken. After considering that question, and in view of the Louisiana concept of "le mort saisit le vif," it was the considered opinion of the defendants that a formal Judgment of Possession would not affect plaintiffs' right to use April 21, 1970, a date one year after the death of the decedent, as the alternate valuation date, pursuant to 26 U.S.C.A. § 2032 and the Treasury Regulations applicable thereto. Plaintiffs, on the other hand, contend that the Regulations are clear and unambiguous, and that a competent lawyer would have known that a Judgment of Possession would fix the alternate valuation date at the time when the Judgment of Possession was obtained.

■ Under the Louisiana doctrine of "le mort saisit le vif," (the dead gives seisin to the living), the legal heirs, or heirs of the blood, as a matter of law, succeed to the inheritance immediately upon the death of the deceased, even though the rights of such heirs, in certain circumstances, are held in suspense until they accept or reject the succession. But if the heirs accept, they are considered to have succeeded to the deceased from the moment of his death. See La.Rev.Civ.Code, Arts. 944–946; 15 Tulane Law Review 580. Thus, the question arises as to whether or not a formal Judgment of Possession is a "distribution" of the assets of the succession, or whether it is merely a confirmation of what has already taken place —a "change in form," if you will. The defendants concluded that the Judgment of Possession was not a distribution of the succession effects as contemplated by the Tax Regulations.

The precise question here involved had not been decided by the Courts prior to July 7, 1969. But subsequent thereto, in the case of Stoutz v. United States, 324 F.Supp. 197 (ED La.1970), aff'd 439 F. 2d 1197 (CA5—1971), the Court held that the alternative valuation date for Federal Estate Tax purposes was fixed by the entry of a Judgment of Possession. Thus, in retrospect, defendants' July 7, 1969 appreciation of the effect of a Judgment of Possession was apparently wrong. But on July 7, 1969, Stoutz had not been decided, and as Judge Christenberry noted in his Stoutz opinion, "This issue presents a novel question of the effect, for federal estate purposes, of a Louisiana Judgment of Possession."

Counsel for both sides have filed affidavits to support their positions in this case. Defendants have filed an affidavit of Louis B. Graham, Esq., one of the attorneys involved in the Stoutz case. The gist of Mr. Graham's affidavit is that for many years prior to the decision in the Stoutz case, it had been his professional judgment, and he had so followed this professional judgment, that

the placing of heirs in possession of an estate by means of a Judgment of Possession of a Louisiana Court did not affect the right of the heirs to claim an alternate valuation date for the assets of the estate one year from the date of death of the decedent in computing Federal estate taxes. He states that to his knowledge other attorneys practicing law in the State of Louisiana had also, in the past, taken this position with respect to an alternate valuation date.

The plaintiffs file the affidavit of Frank L. Dobson, Esq., another Louisiana attorney. Mr. Dobson states that "In affiant's opinion, as of July 7, 1969, a judgment of possession rendered in a Louisiana succession clearly had the effect of fixing the alternate valuation date for federal estate tax purposes as of the date of such judgment, forfeiting the right to elect the then permissible alternate valuation date of one (1) year after the death of the deceased, and affiant would have so advised any of his clients as of that time * * *. In affiant's opinion, an attorney's advice and opinion, as of July, 1969, that a judgment of possession would not defeat the right to the one year alternate valuation date was not justifiable by any statute or jurisprudence, while the contrary conclusion was clearly supported by 26 U.S. C. 2032 and the then existing jurisprudence."

■ These affidavits simply point up the fact that there was apparently an honest difference of professional opinion on this point. The defendant attorneys and Mr. Graham have one opinion, while Mr. Dobson seems to be of a contrary opinion. There had been, as of July 7, 1969, no judicial determination of this question. The argument of the defendants in view of the Louisiana doctrine of "le mort saisit le vif" was certainly a plausible argument, while on the other hand, Mr. Dobson's interpretation of the regulations was certainly not unreasonable. The state of the law at the time simply gave rise to honest differences of opinion among qualified competent lawyers. When presented with that precise

question, the Court, in *Stoutz*, agreed with the position now stated by Mr. Dobson. That does not mean that the defendants were guilty of malpractice. There was a reasonable basis for defendants' advice and opinion rendered in July of 1969, and there is certainly nothing in this case on which to base the conclusion that the defendants, as a matter of law, based upon the uncontroverted facts in this case, failed to exercise that degree of care, skill and diligence which is commonly possessed and exercised by practicing attorneys in this jurisdiction. The mere fact that an attorney formulates an opinion and in good faith acts upon it, and it is later found that his opinion is not affirmed by the Courts, does not require or necessarily support the conclusion that the attorney is guilty of malpractice.

Plaintiffs argue that the *Ramp* case, supra, established the principle that a lawyer has a duty to avoid, if possible, all possibilities that his client's rights may be subject to question. This interpretation of *Ramp* overstates the duty of an attorney. It is simply not reasonable to expect a lawyer to guarantee that his client's rights will never become subject to question, and it is certainly not reasonable to conclude that a lawyer is guilty of malpractice simply because his professional judgment differs with a later court opinion.

The basic question involved here is simply whether or not the defendants met the standard of care announced in *Ramp*. This Court feels that the advice given by the defendant, although it proved to be incorrect, was justified in light of the peculiarities of Louisiana law, the lack of prior judicial determination of what the effect of a Judgment of Possession would have on Federal estate taxes, and the difference of opinion among Louisiana attorneys on this question. There is nothing in this case to indicate a lack of diligence on the part of the defendant or a disregard of procedures established by practicing attorneys in this jurisdiction. In the course of handling a legal matter an attorney is faced with many crossroads at which he must choose one strategy or another. The many considerations present each time a decision must be made will seldom be viewed in exactly the same perspective by all other lawyers, and just because one course of action is sustained by the Court, while another is not, does not mean that anyone is guilty of malpractice. It is the conclusion of this Court that the defendants, as a matter of law, did not violate the standard of care required by *Ramp*.

For these reasons, it is the opinion of this Court that the motion for summary judgment, filed by all defendants herein, should be granted, and judgment will be entered accordingly.