471 F.2d 840
 Edgar D. SMITH and Hugh E. Smith, Both Individually and as
Representatives of the Estate of Rose Champlin
Heyer, Plaintiffs-Appellants,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY et al., Defendants-Appellees.
 No. 72-2851 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 Dec. 21, 1972.
Rehearing Denied Jan. 26, 1973.
 
 Wendell G. Lindsay, Jr., Baton Rouge, La., for plaintiffs-appellants.
 Donald S. Zuber, Baton Rouge, La., for defendants-appellees.
 Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 Both parties to this appeal from the trial court's order, D.C., 344 F.Supp. 555, entering a summary judgment in favor of the defendant attorneys (and their insurer) agree that the correct Louisiana standard of care to be applied in an attorney malpractice[1] suit was succinctly enunciated by the Louisiana Court of Appeals in Ramp v. St. Paul Fire & Marine Insurance Co., La.App., 1971, 254 So.2d 79, 82:
 
 
 2
 "When an attorney at law undertakes litigation on behalf of a client, he impliedly represents that he possesses the requisite degree of learning, skill and ability necessary for the undertaking, and he further warrants that he will exercise reasonable care and diligence in the handling of the matter. When the attorney fails to exercise that degree of care, skill and diligence which is commonly possessed and exercised by practicing attorneys in his jurisdiction, he is liable to his client for any damages resulting from that failure."
 
 
 3
 The underlying dispute centers around the question of whether the earlier date (July 1969) of the entry of a judgment of possession of an estate under the applicable Louisiana law, see La.Code of Civ.P., arts 3001-3062; Key v. Salley, 1951, 218 La. 922, 51 So.2d 390, automatically sets the alternate valuation date allowed by 26 U.S.C.A. Sec. 2032 and Treas.Reg. Sec. 20.2032-1, rather than one year after the date of death.[2]
 
 
 4
 Prior to Stoutz v. United States, E.D. La., 1970, 324 F.Supp. 197, aff'd., 5 Cir., 1971, 439 F.2d 1197, there was no precise judicial authority on the matter. But the plaintiff clients contend that any attorney possessing the "requisite degree of learning, skill and ability" necessary for Louisiana estate planning and exercising "reasonable care and diligence in handling the matter" would-even prior to Stoutz-have necessarily concluded that the Louisiana judgment of possession was a "distribution" within the meaning of the statute-especially as spelled out in detail and precision in Treas.Reg. Sec. 20.2032-1(c)(i) which literally speaks in terms of a Court decree. Countering this, the defendant attorneys insist that under the Civilian concept of seisin[3] the judgment of possession is but confirmation of the vesting of title in the heirs as of the moment of death-a result which would permit the one-year-after-death valuation date.
 
 
 5
 On the motion for summary judgment there were opposing affidavits of outside attorneys-one stating that experienced, competent counsel handled it as did defendant attorneys,[4] the other stating that he and others considered that the literal terms of Sec. 2032 and the regulations would precipitate the "distribution" as of the time of the judgment of possession.
 
 
 6
 Presumably calling on his personal knowledge of the professional standing of these verbal adversaries, as to whom there is no adverse suggestion, the trial judge reasoned that "there was apparently an honest difference of professional opinion on this point," and, that being so there could not have been any failure to exercise due care.
 
 
 7
 But we think this was too fast, too soon. We have often pointed out the risky course of deciding negligence-proximate cause issues on summary judgment. Marsden v. Patane, 5 Cir., 1967, 380 F.2d 489, 491; Gauck v. Meleski, 5 Cir., 1965, 346 F.2d 433; Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523; Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492; Murphy v. Light, 5 Cir., 1958, 257 F.2d 323.
 
 
 8
 If-and the if is a very big one-the case ultimately narrows to the over-simplified approach of the trial judge, there is still, at this point, too much undisclosed. What is a good faith difference of professional opinion? Isn't something more involved than a recital that some lawyers hold to this view and others to another?
 
 
 9
 This professional expert evidence needs to be tested as any other. Crossexamination will expose many things now undisclosed by inescapably conclusory affidavits: Just what basis did each have for his practice? What significance did he give to this or that fact of federal estate tax or Louisiana jurisprudence? Did he regard it as open and shut? Did he recognize a risk? If so, to what extent? What would a prudent lawyer do in the face of recognized risks, either in cautioning the client or finding anchors to windward?
 
 
 10
 Only the amalgam of these and other pertinent factors would permit the factfinder to draw the critical inference of Ramp due care. And this is so whether the ultimate decision under Louisiana law is that the issue of malpractice is treated as one of fact or of "law".[5]
 
 
 11
 While it is clear from post-Stoutz hindsight that the point of law is settled, the actions of the defendant attorneys in the pre-Stoutz period must be tested for reasonableness in light of the then existing professional standards. Thus, though we hold that summary judgment was improper we express no opinion on the ultimate merits of the case or the best mode to resolve them. We repeat the frequent caveat that reversal does not necessarily foreshadow a trial, partial or full blown. That depends on the facts as developed and tested, not what the lawyers say they are in opposing affidavits. See Tyler v. Peel Corporation, 5 Cir., 1967, 371 F.2d 788, 791-792; Cook & Nichol, Inc. v. Plimsoll Club, 5 Cir., 1971, 451 F.2d 505, 511; Mizell v. North Broward Hospital District, 5 Cir., 1968, 392 F.2d 580; Webb v. Standard Oil Co., 5 Cir., 1969, 414 F.2d 320; Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, 5 Cir., 1958, 257 F.2d 162, 167; Chagas v. Berry, 5 Cir., 1966, 369 F.2d 637, 642; Barber v. Motor Vessel "Blue Cat", 5 Cir., 1967, 372 F.2d 626.
 
 
 12
 Reversed and remanded.
 
 
 
 *
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I
 
 
 [1]
 The clients expressly disclaim lack of good faith, incompetence or wilful, wanton misconduct. Indeed they embrace the lamentation of Dean Wade that it is unfortunate that the term "malpractice" has evolved
 "The term negligence ought not to carry a . . . connotation [of professional incompetence] because we are all aware that a competent and skillful person may make a slip or be forgetful on a single occasion without losing his professional skill." Wade, The Attorney's Liability for Negligence, 1959, 12 Vanderbilt L.Rev. 755.
 
 
 [2]
 In the contemporary world of inflation the earlier date would normally produce the lower estate valuation. Here it cuts the other way since the principal assets were securities which dropped sharply in the 1969-1970 market decline
 
 
 [3]
 "Le mort saisit le vif"-the dead gives seisin to the living
 
 
 [4]
 The affiant was the unsuccessful counsel in Stoutz
 
 
 [5]
 There are currently two schools of thought concerning the issue of whether or not an attorney's conduct constitutes malpractice is a question of fact or law. See Note, Standard of Care in Legal Malpractice, 1968, 43 Indiana L.J. 771, 776-81. Although Louisiana has not positively committed itself to either view, the Louisiana Supreme Court has recently heard argument in Ramp, supra, and may furnish guidance for the federal court on remand