Edgar D. SMITH and Hugh E. Smith, both Individually and as Representatives of the Estate of Rose Champlin Heyer,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY et al.

Civ. A. No. 71–121.

United States District Court, M. D. Louisiana.

Nov. 30, 1973.

Wendell G. Lindsay, Jr., Lindsay & Seago, Baton Rouge, La., for plaintiffs.

Donald S. Zuber, William C. Kaufman, III, Seale, Smith & Phelps, Baton Rouge, La., for defendants.

E. GORDON WEST, District Judge:

This is a legal malpractice case brought by the plaintiffs, Dr. Edgar D. Smith and Mr. Hugh E. Smith against Dalton Barranger, Esq., his law firm, Barranger, Barranger and Jones, and their professional liability insurer, St. Paul Fire and Marine Insurance Compa-

ny. The essential facts are not in serious dispute.

Mrs. Rose Champlin Heyer, a citizen of Louisiana and the mother of the two plaintiffs, died on April 21, 1969. Her heirs, Edgar and Hugh Smith, citizens of Arkansas, employed Mr. Dalton Barranger, a member of the defendant law firm, to handle the succession of their mother. The estate of Mrs. Heyer was quite substantial, having among its major assets a home valued at approximately $132,000 and corporate stocks valued as of the date of death at $233,245.69. While the plaintiffs were in Covington, Louisiana, for their mother's funeral they had a conference with Mr. Barranger and informed him that they wished to dispose of their late mother's home as soon as possible as it would cost them about $300 a month to maintain it, and they had no use for it. Mr. Barranger advised the plaintiffs that since the estate was entirely solvent it would not be necessary to have an administration, and that a simple putting · in possession would be much less expensive and would permit the heirs to sell the home as soon as the judgment of possession was obtained. This conference took place on or about April 25, 1969. Some time before the judgment of possession was obtained, the question of claiming an alternate valuation date under Section 2032 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 2032) came up for discussion between the plaintiffs and Mr. Barranger. The pertinent federal tax regulations pertaining to Section 2032 provide:

"(a) In general * * *

"(1) Any property distributed, sold, exchanged, or otherwise disposed of within one year after the decedent's death is valued as of the date on which it is first distributed, sold, exchanged, or otherwise disposed of;

"(2) Any property not distributed, sold, exchanged, or otherwise disposed of within one year after the decedent's death is valued as of the date one year after the date of the decedent's death; * * *

"(3) Any property, interest, or estate which is affected by mere lapse of time is valued as of the date of the decedent's death, but adjusted for any difference in its value not due to mere lapse of time as of the date one year after the decedent's death, or as of the date of its distribution, sale, exchange, or other disposition, whichever date first occurs.

"(b) * * *

"(c) Meaning of 'distributed, sold, exchanged, or otherwise disposed of'. (1) The phrase 'distributed, sold, exchanged, or otherwise disposed of' comprehends all possible ways by which property ceases to form a part of the gross estate. * * * The term does not, however, extend to transactions which are mere changes in form. * * *

"(2) Property may be 'distributed' either by the executor, or by a trustee of property included in the gross estate under sections 2035 through 2038, or section 2041. Property is considered as 'distributed' upon the first to occur of the following:

"(i) The entry of an order or decree of distribution, if the order or decree subsequently becomes final;

"(ii) The segregation or separation of the property from the estate or trust so that it becomes unqualifiedly subject to the demand or disposition of the distributee; or

"(iii) The actual paying over or delivery of the property to the distributee.

"(3) Property may be 'sold, exchanged or otherwise disposed of' by: (i) the executor; (ii) a trustee or other donee to whom the decedent during his lifetime transferred property included in his gross estate under section 2035 through 2038 or section 2041; (iii) an heir or devisee to whom title to property passes directly under local law; * * * "

This question of whether or not to use an alternate valuation date was impor-

tant to the plaintiffs because of the fact that in 1969 the stock market was in a state of decline and it might prove advantageous, for estate tax purposes, to use a date one year after the decedent's death as the date of valuation rather than the date of death and rather than some date in between. The plaintiffs now state that they wanted to assume a "wait and see" attitude during the year following the death of their mother. The outcome of this consultation was that Mr. Barranger advised the plaintiffs that under Louisiana law a judgment of possession would not constitute a "distribution" as contemplated by the Revenue Code and that hence the plaintiffs would be safe in taking possession of the estate and selling the house as long as they did not dispose of any of the stock during the year after their mother's death. This conclusion was reached by Mr. Barranger based upon the fact that there was no executor involved in this succession; there was no "trustee or other donor" involved; title to the property, under Louisiana law, as hereinafter discussed, passed to the heirs by mere operation of law, and thus, as long as they did not sell the securities involved, there would be no "distribution" of them; and based upon his belief that the Louisiana judgment of possession did not constitute a distribution of the assets of the decedent's estate. Consequently, they were placed in possession by a Louisiana judgment of possession on July 7, 1969 and they sold the home for $142,015.00 in August of 1969. Some time in July of 1969, after the judgment of possession was rendered, Mr. Hugh Smith wrote to Mr. Barranger stating that it appeared that it would be advantageous to use the alternate date of one year following decedent's death for valuation of the stock. When the Federal Estate Tax Return was filed, Mr. Barranger did use that date and he also used the date of the sale of the house, rather than the date of decedent's death, for its valuation.

Sometime in September of 1969, after the house had been sold, the plaintiff, Edgar Smith, had occasion to consult an attorney in Arkansas by the name of John L. Johnson, Esq., concerning some of his personal tax problems. In the course of their consultation Dr. Smith told Mr. Johnson that he was still holding the stock inherited from his mother, and intended, on advice of Mr. Barranger, to continue to do so until after April 21, 1970 so that he could use that date as his alternate valuation date. Mr. Johnson expressed doubt that plaintiffs could use the alternate valuation date of one year following death because he believed that the date of the judgment of possession fixed the latest alternate valuation date that could be used. On September 23, 1969, Mr. Johnson telephoned Mr. Barranger and advised him of his doubts, and Mr. Barranger responded that "there is no problem." Following this telephone conversation Mr. Barranger had his secretary, Mrs. Skelton, contact the Internal Revenue Service in New Orleans, Louisiana for the purpose of inquiring whether or not the judgment of possession in Louisiana would in any way affect the right of the plaintiffs to use a date one year after death of the decedent as their alternate valuation date. She was advised that a Louisiana judgment of possession would in no way affect the use of the alternate valuation date. After the Federal Estate Tax Return was filed, which was more than one year after the death of the deceased, Mrs. Skelton, at the request of Mr. Barranger, again contacted the Internal Revenue Service, and this time was informed that the date of the judgment of possession would be considered the latest alternate valuation date that could be used. This change in position by the Internal Revenue Service came about, as we shall see, after the case of Stoutz v. United States, 324 F. Supp. 197 (E.D.La.1970) had been filed, but before a decision in that case had been rendered. The estate of Mrs. Heyer was valued, for tax purposes at $282,445.87 at the time of the judgment of possession as compared with its value of $230,631.20 for tax purposes one year

after decedent's death. This resulted in an increase in the Federal Estate Tax due in the amount of $14,610.19.

On July 6, 1970 Mr. Barranger wrote to his clients advising them of the position taken by the Internal Revenue Service. This suit was thereafter filed wherein the plaintiffs seek damages resulting from what they allege to be legal malpractice. They contend that Mr. Barranger was negligent in that the advice he gave them was bad and that he failed to exercise that degree of skill ordinarily possessed by other members of the legal profession engaged in similar legal work in the same locality. The defendants admit that as it turned out, the Internal Revenue Service did not, in the final analysis, share Mr. Barranger's opinion as to the effect of a Louisiana judgment of possession on the alternate valuation date, but they contend that Mr. Barranger was not guilty of negligence nor did he fail to exercise the required degree of skill and judgment expected of and used by other attorneys practicing in the same area under the same circumstances. After a careful consideration of the testimony adduced at the trial of this case on May 29, 1973, it is the opinion of this Court that the evidence does not preponderate in favor of the plaintiffs' claim.

 The question is not whether or not the advice given was, by hindsight, correct, but rather whether or not the advice given was the result of the proper exercise of skill and professional judgment under the conditions existing at the time the advice was given. Prior to September 19, 1970, there was no jurisprudence on the question of whether or not a Louisiana judgment of possession amounted to a "distribution" under the provisions of Section 2032 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 2032). On that date the case of Stoutz v. United States, supra, was decided. This was the first time that there had been a judicial determination of that question and in that litigation it was referred to as presenting "a novel question." In the *Stoutz* case, the United States District Court for the Eastern District of Louisiana concluded, for the first time, that a Louisiana judgment of possession was more than a "mere change of form" and that it did indeed constitute a "distribution" as contemplated by Section 2032, and that it did operate to establish the latest alternate valuation date that could be used. This, despite the fact that Article 3062 of the Louisiana Code of Civil Procedure specifically says that a judgment of possession is only "prima facie evidence of the relationship of the deceased to the parties recognized therein" as heirs, and of "their right to the possession of the estate of the deceased," and despite the provision of Article 940 of the Louisiana Revised Civil Code which says that "a succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased," and the following Article 941 of the Civil Code which says that "The right mentioned in the preceding article is acquired by the heir by the operation of the law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it." These Articles form the basis of Louisiana's doctrine of "le mort saisit le vif" (the dead gives seisin to the living) by which the assets and liabilities of the succession are acquired by the heirs immediately upon the death of the decedent by operation of law leaving the judgment of possession as a mere recognition of the heirs as owners of that which they actually acquired at the time of death. It is therefore understandable why, as the evidence in this case showed, many capable and competent attorneys believed that a fair interpretation of these Articles led to the conclusion that the heirs acquired nothing by the judgment of possession except recognition as owners of that which they had actually acquired by operation of law at the moment of the death of the deceased. The Louisiana Revised Civil Code specifically says that the transfer of ownership of the succession property from the estate of the deceased to the heirs of the deceased

occurs "by the operation of the law alone" (La.R.C., Art. 941), and Section 20:2032–1(c) of the Federal Tax Regulation states that "Property may be 'sold, exchanged, or otherwise disposed of' by \* \* \* (iii) an heir or devisee to whom title to property passes directly under local law; \* \* \*." Thus it cannot be said to be an unreasonable interpretation of these laws if an attorney concludes that since ownership has passed, by operation of law directly to the heirs at the time of death, and since the heirs have not disposed of the property, there has been no distribution of the property involved under Section 2032 of the Revenue Code.

Indeed, when the United States went into Court in the *Stoutz* case claiming the contrary, the litigation was characterized as raising a "novel question." At the time Mr. Barranger gave the advice complained of, the *Stoutz* case had not been tried nor would he have had any reason to know it had even been filed. The testimony of the defendant, Mr. Dalton Barranger, a 72 year old attorney, was introduced by deposition taken on March 23, 1973. He testified that he had handled other matters involving Federal Estate Taxes and that his secretary of fifteen years, Mrs. Catherine Skelton usually did the physical preparation of the returns and other documents. When asked whether or not he did any special research in connection with this particular return, he stated that he did not because he felt that from his past experience he was sufficiently familiar with this phase of the law to properly advise a client. He testified that it was his opinion that under the Louisiana doctrine of "le mort saisit le vif" the heirs obtained title by mere operation of law at the moment of death of the deceased, and that the judgment of possession did not constitute a distribution. He further testified that he did not do any special research on the question at the time of giving this advice because he was familiar with Louisiana law and that in his opinion title to the

decedent's property passed to the heirs at the moment of death.

There can be no question but that this interpretation of Louisiana law is correct. But plaintiff makes much of the fact that Mr. Barranger was unable to say that he researched the tax regulation in question before giving this advice. But under the facts of this case, that is immaterial. In order for the plaintiffs to recover, they must prove, by a preponderance of the evidence, that the defendant was negligent in giving the advice he gave, and that they suffered damage thereby. Under the circumstances of this case it would have made no difference whether Mr. Barranger read or re-read the tax regulation. It is obvious from his discussions with his clients that he was thoroughly familiar with the regulation, and it is obvious that he was then, and is now, of the opinion that a Louisiana judgment of possession should not affect the alternate valuation date. Being familiar with the regulation, as he obviously was or he could not have even discussed it with his clients, and being of the opinion that his advice was sound, and being of the opinion now that the decision in the *Stoutz* case was wrong, it is obvious that a re-reading of the regulation before advising his clients would have had no effect on the advice given. So the question is not whether or not Mr. Barranger re-read the regulation but rather whether or not the advice given, even though wrong by hindsight, was given by the use of less than the good judgment and skill which Mr. Barranger was required, as a practicing attorney, to use. The plaintiffs have failed to prove this by anything like a preponderance of the evidence.

Three practicing attorneys testified for the plaintiffs. Mr. Roy Lilly, an attorney practicing in Bogalusa, Louisiana, testified that he had handled perhaps ten or fifteen matters involving the payment of Federal Estate Taxes. He did not say that he had ever handled a matter where the question of the alter-

nate valuation date was directly involved. He stated that in his opinion a Louisiana judgment of possession is only "prima facie evidence" of a transfer of ownership and that while he knows it is regarded by many as bringing about a "mere change in form," which would not be a distribution under the Tax Regulations, that nevertheless he thinks it is more than that. He states that he would advise a client of the lack of jurisprudence on the subject, and he thinks the defendant was negligent for not having done so. This is the sum total of his testimony. As stated above, he frankly admitted that he knows that many attorneys regarded a Louisiana judgment of possession as bringing about nothing more than a "mere change in form," even though he personally did not agree with that conclusion.

The next witness was Mr. Guy L. Deano, Jr., an attorney who states that he has handled about twenty Federal Estate Tax Returns. Whether or not he had ever been called upon to give advice on the particular question here involved is not clear from his testimony, but in any event he concludes that this whole problem could have been avoided by simply waiting a year before putting the heirs in possession. But this is merely begging the question. The plaintiffs wanted to sell the real estate involved and the only way they could have done so, short of obtaining a judgment of possession, was to invoke an administration of the succession, the cost of which would probably have exceeded the loss now complained of. This attorney stated that since he is "never too confident on a point of law" that he would have advised his client of the risk involved. But it is fair to wonder whether or not he would so advise a client if he did in fact feel confident that his advice was sound and if there was no jurisprudence to the contrary, and particularly, if as hereinafter shown, the same advice had previously been given with the apparent approval of the Internal Revenue Service. The fact that this attorney, who is "never too confident on a point of law," concludes that the defendant was negli-

gent for believing that his advice was sound under the peculiar circumstances of this case, is not very convincing evidence of negligence on the part of the defendant.

The last attorney witness for the plaintiffs was Mr. Autley B. Newton. He thinks the defendant was negligent because he thinks the defendant should have sought the advice of the I.R.S. or "some other lawyer." But as the record shows, when the I.R.S. was first contacted by Mr. Barranger's office, they affirmed the fact that a Louisiana judgment of possession would not affect the alternate valuation date. No comment is really required on this witness's unusual conclusion that the defendant, an attorney of many, many years standing, should have "sought the advice of some other attorney."

The defendants called two practicing attorneys as witnesses. The first was Mr. Louis Graham, who specializes in corporate, real estate and probate work. He has handled about ten matters involving Federal Estate Taxes in the past ten years, and he was the attorney who handled, and ultimately lost, the *Stoutz* case. In handling the *Stoutz* case, which later became the first case to present to the Court the question here involved, he gave the exact same advice to his clients that the defendant here gave to his, i. e., that a Louisiana judgment of possession would not affect the alternate valuation date. He testified that he had done this on prior occasions with no repercussions. In the *Stoutz* case he advised his clients that they could be put in possession but that they should not sell the securities involved until one year after death. He was amazed when this was questioned by the I.R.S. in the *Stoutz* case and believes that it was questioned because of the large amount of difference in value involved. It is his opinion that the language of the Tax Regulation, when read in light of Louisiana law, together with the fact that the effect of the Louisiana judgment of possession on the alternate valuation date had never even been questioned in Court before, led to the reason-

able conclusion that there was not sufficient ambiguity to warrant precautionary advice. As this attorney so aptly stated, there are two kinds of lawyers, one who tries to scare his client to death, and others, like him, who exercise their professional judgment to the best of their ability and have confidence in their judgment. This witness testified that after he lost the *Stoutz* case he was "besieged with calls" from other attorneys who stated that they were suddenly being checked by the I.R.S. in cases where they had routinely given advice similar to that given by Mr. Graham in the *Stoutz* case, and by the defendant in this case. It was his opinion that the advice given by the defendant in this case, prior to the decision in *Stoutz,* evidenced the exercise of the judgment and skill ordinarily exercised by other attorneys in that area at that time. Mr. Graham is still of the opinion that, viewed in light of Louisiana law, the *Stoutz* case is wrong.

The next witness was Mr. Gus A. Fritchie, Jr. He is a practicing attorney who states that he has handled "several Federal Estate Tax cases." He testified that prior to the *Stoutz* case he always advised his clients that a judgment of possession would in no way affect the alternate valuation date. He stated that his decision to use the alternate valuation date of one year after death had never been questioned by the I.R.S. He stated further that in three specific cases he could remember having actually negotiated with the I.R.S. on valuations after a judgment of possession had been obtained. In two of the cases he ended up using the date one year after death, and in one he used the date of death as the valuation date. It was his opinion that there was nothing unusual or wrong with the advice given by the defendant as of the time when it was given.

Thus it is apparent that prior to the *Stoutz* case there was no jurisprudence to the effect that a Louisiana judgment of possession would affect the alternate valuation date, and indeed there was ample and respectable opinion held by competent attorneys that it would not.

There was positive testimony from competent attorneys that they did not advise clients that the judgment of possession might affect the valuation date, and the only real evidence opposing that was from attorneys who testified not that they did so advise clients but that they thought a client should have been so advised. This Court's observation of these witnesses leads it to the conclusion that this latter testimony was more the result of hindsight than of forethought.

It could well be said that a reading of the Regulation involved here, absent any consideration of the peculiarities of Louisiana law, should have indicated the possibility of an ordinary judgment of possession amounting to a distribution. But Louisiana lawyers, steeped in the tradition of the civil law, and being thoroughly familiar, as the defendant in this case was, with the Louisiana doctrine of "le mort saisit le vif," and being aware of the generally accepted view in Louisiana that a judgment of possession is merely a recognition of the fact that the persons applying therefor are in fact the ones who inherited and obtained seizin of the property of the deceased at the moment of his death, were justified, before the *Stoutz* case, in concluding that the Louisiana judgment of possession did not affect the alternate valuation date. Indeed, as the evidence here shows, even the I.R.S. itself took that same position during the years preceding the *Stoutz* case. There are many competent lawyers in Louisiana who still believe the *Stoutz* case to be wrong.

The duty of an attorney to his client was succinctly set forth by the Louisiana Supreme Court in the case of Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972) as follows:

"An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. He is not required to exercise perfect judgment in every instance. However, the attorney's license to practice and his contract of employ-

ment hold out to the client that he possesses certain minimal skills, knowledge, and abilities. The fact that an attorney's judgment in confecting contracts, handling suits, and doing other business may result in litigation is not, in and of itself, a breach of a duty to the client. Risk of future litigation is often a necessary element or result of legal advice and legal representation. The very fact of litigation is a result of the disparity of professional judgment of those in the legal profession. However, lawyers are obligated to scrutinize any contract which they advise their clients to execute, and are required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it."

 The Louisiana Supreme Court, as evidenced by the above quote, recognized the fact that if the attorney has reason to believe, or should have reason to believe that there could be some adverse consequences from taking the course advised, he is obligated to so advise his client. But if there is no reasonable ground for him to believe that his advice is questionable, he certainly has no obligation to advise clients of every remote possibility that might exist. And according to the testimony in this case, as of the time the questioned advice was given, there was no reason for the defendant to believe that his advice was not sound. As was stated in Hodges v. Carter, 239 N.C. 517, 80 S.E. 2d 144, 45 A.L.R.2d 1 (1954):

"An attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake on a point of law which has not been settled by the court of last resort in his State and on which reasonable doubt may be entertained by well-informed lawyers."

In summary, at the time the defendant advised the plaintiffs that a Louisiana judgment of possession would not affect the alternate valuation date, there was no jurisprudence to the contrary. At that time other attorneys practicing in the same area, whose competency has not been questioned, were actually advising their clients to the same effect. Shortly after this advice was given and prior to the *Stoutz* case, the I.R.S. actually advised defendant's office to the same effect. The defendant's belief, and the belief of other competent attorneys, that the advice given by the defendant to the plaintiffs was sound was based upon what, before the *Stoutz* case, was a reasonable interpretation of Louisiana law pertaining to the function of a Louisiana judgment of possession. Mr. Barranger must be judged, not by hindsight, but in view of the law as it existed at the time his advice was given. The plaintiffs have simply failed to prove, by anything like a preponderance of the evidence, that the defendant, Mr. Dalton Barranger, failed, in view of the state of the law prior to September 19, 1970, to exercise that degree of care, skill and diligence which is exercised by prudent practicing attorneys in his locality.

For these reasons, judgment will be entered herein in favor of all defendants, dismissing this suit at plaintiffs' cost.