ROGERS, J.
 

 Plaintiff appeals from a judgment dismissing her suit on an exception of no cause of action.
 

 In her original petition, plaintiff alleges, substantially, the following facts, viz.:
 

 That the defendant James G. Perkins owes her $4,500.
 

 That her mother, Mrs. Ella D. McQueen, on March 11, 1920, lent defendant $9',000, represented by nine promissory notes of the defendant, one payable on March 11, 1921, and one payable each successive calendar year, thereafter with interest, secured by a mortgage on defendant’s Forrest plantation in the-parish of West Feliciana.
 

 That on February 6, 1922, Mrs. McQueen,, then a widow,1 delivered the notes marked, “Paid in full,” to her attorney E. S. Muse, and upon her written authority caused the inscription of the mortgage in the clerk’s office! to be canceled.
 

 That Mrs. McQueen died on June 21, 1925, leaving a will by which she bequeathed the residue of her estate to her two) daughters— the plaintiff herein and Mrs. Mattie McQueen Perkins, wife of the defendant.
 

 That the will was duly probated and the legatees placed in possession of the estate of the testatrix.
 

 That by virtue of the will, as well as by reason of being one of the two sole heirs of' law of her mother, plaintiff is the owner of an undivided one-half of the decedent’s estate and of the indebtedness of $9,000 due by the defendant.
 

 Petitioner further alleges:
 

 “X. That while said notes were marked, ‘Paid in full,’ and the inscription on said mortgage on the order of Mrs. McQueen has been erased from the mortgage records of the parish of West Feliciana, in truth and in fact no part of said indebtedness has ever been paid, and the same remained at the death of said Mrs. McQueen a subsisting asset of her estate, and, as such, an undivided one-half thereof now belongs to petitioner.
 

 “XI. That the real nature of these transactions was this: That during the month of February, 1922, and thereabouts, operations in the way of boring for oil upon the Forrest plantation were in imminent prospect of being actively carried out; that the 'convenience and business interests of said Perkins required that he should have a free hand in handling the lands upon which these operations were being prose
 
 *733
 
 cuted; and for this, or- for'-some other reason in the interest of said Perkins, the said Mrs. McQueen as an accommodation to said Perkins, who was her son-in-law with whom she was living in the same house, agreed to erase from the mortgage records of the parish the inscription of her said mortgage upon said plantation so that said Perkins might hold the same as unincumbered property.
 

 “XII. That as a p-art of said altered arrangement, it was understood between Mrs. McQueen and Perkins that the due date of said notes should be changed, and that the entire indebtedness should become due and exigible ‘when oil should be found in paying quantities on the Forrest plantation,’ as stated in the will of said Mrs. McQueen, and it was solely in pursuance of this altered agreement that said notes were marked paid and the inscription of the mortgage canceled.
 

 “XIII. That the boring for oil on the Forrest plantation was vigorously prosecuted; that large sums of money were fruitlessly spent in a vain endeavor to find oil on said plantation; that the whole enterprise proved a dismal failure, and operations of any nature looking to the discovery of oil on said lands have long since been definitely abandoned; that no oil has been found anywhere near the vicinity of Forrest plantation; and that there is no prospect of finding any, the effort to procure oil on that plantation being a wildcat operation pure and simple, that long since definitely ended with no chance of success.
 

 “XIV. That the maturity of said indebtedness was fixed with these operations in view, and under these conditions the said mortgage indebtedness of said Perkins to said Mrs. McQueen matured and became exigible in a reasonable time after February 6, 1922, on the failure of said operations; that many months have elapsed since the abandonment of boring for oil upon said Forrest plantation; that up to the present is a reasonable time in which to wait for the payment of said indebtedness; and that said indebtedness is thus past due and exigible.’’
 

 Petitioner then averred, should she be mistaken as to the facts above stated, in the alternative, that no part of the indebtedness has been paid; that the original contract with notes is unaltered and that the defendant Perkins remains indebted under all the terms and conditions of the original contract; that petitioner is entitled to recover judgment against the defendant upon the. notes so far as they may be. due in principal, interest, and attorney’s fees, with the right to collect the others as they mature.
 

 That petitioner has the right, as to one-half thereof, to have the mortgag'e on defendant’s plantation reinscribed to secure the indebtedness.
 

 An exception of no cause of action to this petition was filed by the defendant. The exception was argued and taken under advisement by the court on April 15, 1926. A few days later, to wit, on April 22, 1926, plaintiff filed an amended petition in which she alleged, substantially, that she was in error in representing that the indebtedness evidenced by the mortgage notes of the defendant belonged entirely to her mother, Mrs. Ella McQueen ; that the notes belonged to the eommuity that, at the time of their issuance, existed between Mrs. McQueen and her husband, James W. McQueen, the father of plaintiff, who died intestate on January 26, 1922; that the succession of James W. McQueen was opened and his-widow, Mrs. Ella McQueen, was recognized as widow in community and placed in possession of the community estate, one half as owner and the other half as usufructuary ; that plaintiff and her sister, Mrs. Mattie Perkins, were recognized as sole heirs, and, as such, the owners of his estate;. that petitioner inherited from her father a fourth interest in the indebtedness of the defendant Perkins, but she has received no part thereof ; that should it be determined on the trial of the case that the indebtedness was owned in full by Mrs. Ella McQueen, then one-half of the indebtedness was inherited or acquired by will by plaintiff from her mother; otherwise, plaintiff reiterates all the allegations of her original petition.
 

 The exception was maintained by the eoux’t below on May 10, 1926, and plaintiff’s suit was dismissed, “reserving to her all right w
 
 *735
 
 sue for collation or for the return of such
 
 property
 
 as may have been inadvertently or illegally disposed of by the usufructuary of the estate of James
 
 W.
 
 McQueen.” It was from this judgment that plaintiff appealed.
 

 An examination of the record discloses that only one exception of no cause of action was filed by the defendant, viz., the one directed to the original petition. The judge a quo has not submitted any written reasons for his judgment. Nevertheless, we take it from the language in which the judgment appealed from is couched and the arguments contained in the briefs filed on behalf of the respective parties that the exception was treated and passed upon in the court below, as being applicable to all the issues raised by the plaintiff in both of her petitions.
 

 It is argued on behalf of the defendant that the original petition shows petitioner’s mother, Mrs. Ella McQueen, remitted, and therefore was powerless to revoke, the indebtedness incurred by the defendant, and that plaintiff as an heir has no greater rights than, and is bound by the obligations of, her deceased mother. It is further argued that the allegations of the amended petition are mere conclusions of law, and that, in any event, plaintiff’s mother as • owner and usufructuary clearly had the right to dispose of the notes in any manner she deemed proper ; that plaintiff’s right of action, if any, is against her mother’s estate for an accounting and the return of a thing of like value for the thing subject to the usufruct.
 

 If the allegations of plaintiff’s petitions show a remission by Mrs. Ella McQueen, either as owner or as owner and usufructuary of the indebtedness represented by the mortgage, notes of the defendant, that is the end of the story, and the exception of no cause of action is well founded. But we do not find this to be so. No exception of vagueness or of inconsistency was filed by defendant, and the exception of no cause of action admits as true for its purposes all the facts alleged. Whether the plaintiff will be able to prove these facts on the trial of the ease is a matter which does not concern us at the present time.
 

 On the faces of the petitions, the established facts are that the defendant owed plaintiff’s mother $9,000, represented by his promissory notes secured by mortgage on the Forrest plantation, and that these notes were held by the mortgage creditor either as owner, or as owner and usufructuary; that the notes were marked paid by their holder and were delivered to her attorney with instructions to have the inscription of the mortgage canceled, which was done; that the payment of said indebtedness has not been made, but only postponed; that Mrs. McQueen, who was the mother-in-law of the maker of the notes and living in the same house with him, had agreed as an accommodation to erase the mortgage inscription in order that the mortgagor might hold the property as unincumbered for the purpose of carrying on more freely and conveniently the operations of boring for oil in which he was then engaged; that it was understood the maturities of the notes should be changed so that the entire indebtedness should 'become due and exigible “when oil should be found in paying quantities on Forrest plantation,” as set forth in the will of Mrs. McQueen; that notwithstanding the oil-boring operations were vigorously prosecuted and large sums of money were spent therein the entire enterprise proved to be a failure, and all attempts to discover oil on defendant’s plantation had long since been definitely abandoned; that no oil had been found in the vicinity, and there was no prospect of finding any oil there — all of which matters and things had matured the indebtedness, of which the plaintiff was entitled to recover one-half. In short, that although the property of the defendant had been temporarily released from the mortgage, such release did
 
 *737
 
 not cancel the original indebtedness; that the debt still remained in esse, its payment merely being postponed and changed from a time certain to a time uncertain; that the debt became due and exigible a reasonable time after it was demonstrated that oil could not be found on the defendant’s plantation.
 

 The contention of defendant that plaintiff’s right of action, if any, is against her mother’s estate for an accounting, is not sound. The plaintiff’s petitions show that she and her sister, Mrs. Mattie Perkins, were recognized as the children and sole heirs of their mother, Mrs. Ella McQueen, and of their father, James W. McQueen, and, as such, sent into possession of their respective estates. The judgments putting the heirs in possession terminated the successions. Beauregard v. Lampton, 33 La. Ann. 827. Thereafter the heirs held the property as eo-owners. The heirs of the deceased may sue the debtor of the succession in the same manner as the deceased himself could have done, and, if there be several heirs, each heir may sue for his separate share of' the debt. Code Prac. art. 113; Womack v. Womack, 2 La. Ann. 339; Le Bleu v. North American Co., 46 La. Ann. 1465, 16 So. 501. It cannot be denied that Mrs. McQueen during her lifetime could have instituted suit against the defendant on the cause of action herein set forth, and, therefore, plaintiff, as one of her heirs, enjoys the same right so far as her separate share of the debt sought to be recovered is concerned.
 

 Our conclusion is that an ample cause of •action is set out in the petitions of plaintiff.
 

 Eor the reasons assigned, the judgment appealed from is set aside, the exception of no cause of action is overruled, and the ease is remanded to the district court to be further proceeded with according to law; costs of this appeal to be paid by the defendant and appellee.