Joel C. **HERTSCHE, Jr., Executor of the Estate of Joel C. Hertsche, Deceased, and Joel C. Hertsche, Jr., Transferee of the assets of the Estate of Joel C. Hertsche, Deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 64-327.

United States District Court
D. Oregon.

June 4, 1965.

Joyle C. Dahl, Portland, Or., for plaintiff.

Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., for defendant.

1. "Sec. 2032. Alternate valuation.

(a) General.—The value of the gross estate may be determined, if the executor so elects, by valuing all the property included in the gross estate as follows:

(1) In the case of property distributed, sold, exchanged, or otherwise disposed

KILKENNY, District Judge.

This is a Federal Estate Tax case raising a question as to the proper interpretation of the word "distributed" as used in 26 U.S.C. § 2032(a) (1).[1]

Decedent, at the time of his death in March, 1960, was the owner of a number of shares of the capital stock of the National Lead Co. On October 14, 1960, the executor was authorized, by probate court order,[2] to distribute a substantial number of said shares of stock to the residuary legatees under the will. On October 25, 1960, the executor delivered said shares of stock to said legatees. The stock distributed was valued on decedent's estate tax return at $79.6875 per share, the mean of its high and low selling price on October 25, 1960, the date of the physical delivery. On the audit of the return by the District Director, he proposed, and subsequently assessed, a deficiency in tax, based on the theory that the stock should have been valued at $84.75 per share, its value on October 14, 1960, the date the order was entered directing the distribution. By using the earlier date, the total valuation of the distributed stock was increased by $25,-312.50. The executor paid the deficiency, filed a claim for a refund and interest, the claim was disallowed and this litigation followed.

For determination is the sole issue of whether the stock should be valued as of the date of the order directing the distribution, or valued as of the date of its physical delivery. A proper construction of the word "distributed" as used in the statute and defined in Treasury Regulations holds the solution to the problem.

■■ Although plaintiffs challenge the validity of the Treasury Regulations

of, within 1 year after the decedent's death such property shall be valued as of the date of *distribution*, sale, exchange, or other disposition."
*    *    *    *    *
(Emphasis supplied.)

2. ORS 117.350.

on the subject,[3] I am of the belief that the regulations are valid and are here controlling. Treasury Regulations covering the alternate valuation date, first appeared in 1936 as Treasury Regulation 80, Article 13½ (as added by T.D. 4699, XV-2 Cum.Bul., 293). That Regulation provided:

Property "distributed" is limited to distributions thereof by the executor, or by the trustee in the case of property included in the gross estate under subdivision (c), (d), or (f) of Section 302 (Internal Revenue Act of 1926), as amended. Distribution may be effected by the entry of the order or decree, of distribution, or, if there is no such order or decree, by the segregation or separation of the property from the estate or the trust, or by the actual paying over or delivery of the property to the person entitled thereto by the will, or under the law, or by the terms of the trust.

Clearly, the substance of the regulation under attack by the taxpayers has been in effect since 1936. Here we are faced with a controlling fact that the Congress enacted the Internal Revenue Code of 1939 and the Internal Revenue Code of 1954, employing essentially the same language in the alternate valuation section, as was used in the parent section in effect at the time of the adoption of the original Treasury Regulation 80 in 1936.

Plaintiffs argue that the legislative history of the legislation demonstrates an intention on the part of the Congress to put aside any technical distinction between distribution, an order for distribution or a segregation or separation of the assets and that such history supports their position that the latest date to be used for an alternative valuation should be either one year from the date of the decedent's death, or whenever the property was physically removed from the administration of the estate, whichever occurred the earlier. The legislative history, in my opinion, does not support this result. On the other hand, I feel that plaintiffs' contentions are answered, in the negative, by a long line of well reasoned cases, including National Lead Co. v. United States, 252 U.S. 140, 146, 40 S.Ct. 237, 64 L.Ed. 496 (1920); United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893 (1933); and in particular Commissioner of Internal Rev. v. Noel's Estate, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (April 29, 1965), holding that a long-standing administrative interpretation, applying to a substantially re-enacted statute, is deemed to have received congressional approval and has the effect of law.

3. Treasury Regulations on Estate Tax (1954 Code):
Sec. 20.2032-1 *Alternate valuation.*
(a) In general. In general, section 2032 provides for the valuation of a decedent's gross estate at a date other than the date of the decedent's death. More specifically, if an executor elects the alternate valuation method under section 2032, the property included in the decedent's gross estate on the date of his death is valued as of whichever of the following dates is applicable:
(1) Any property distributed, sold, exchanged, or otherwise disposed of within one year after the decedent's death is valued as of the date on which it is first distributed, sold, exchanged, or otherwise disposed of;

\*   \*   \*   \*   \*

(c) *Meaning of "distributed, sold, exchanged, or otherwise disposed of.* \* \*

\*   \*   \*   \*   \*

(2) Property may be "distributed" either by the executor, or by a trustee of property included in the gross estate under sections 2035 through 2038, or section 2041. Property is considered as "distributed" upon the first to occur of the following:
(i) The entry of an order or decree of distribution, if the order or decree subsequently becomes final;
(ii) The segregation or separation of the property from the estate or trust so that it becomes unqualifiedly subject to the demand or disposition of the distributee; or
(iii) The actual paying over or delivery of the property to the distributee.

\*   \*   \*   \*   \*

(26 C.F.R. Sec. 20.2032-1.)

Aside from the above, I find that the Treasury Regulations in question are reasonable and not, in any way, inconsistent with the revenue statute under scrutiny. Likewise, such regulations constitute a contemporaneous construction by those charged with the administration of the statutes and should be sustained. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948). The estate tax being one on the privilege of the transfer of property, Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116 (1945), the assignment of a specific value to the property before its actual delivery to the beneficiary is of no significance. The shifting of the economic benefits of the property, rather than the formal delivery is sufficient for the purposes of taxation. Chase Nat. Bank of City of New York v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929).

The agreed facts as delineated in the pre-trial order and the above shall serve as my findings and conclusions. The other arguments and contentions of counsel for plaintiffs, some of which are quite resourceful, have received my consideration. They are without substance. Defendant is entitled to a judgment of dismissal.