Herbert H. LAND, Jr., and John Edgar Land

v.

UNITED STATES of America.

No. 760258.

United States District Court,
W. D. Louisiana,
Monroe Division.

April 8, 1977.

C. McVea Oliver, Oliver & Wilson, Monroe, La., for plaintiffs.

John F. Murray, and Joseph M. Persinger, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., Donald E. Walter, U. S. Atty., and Lawrence L. Jones, Asst. U. S. Atty., Shreveport, La., for the Government.

DAWKINS, Senior District Judge.

## RULING ON MOTIONS

Presented for decision are cross motions for summary judgment. Herbert H. Land, Jr., and John Edgar Land claim that they wrongfully were assessed additional estate tax after closing their mother's succession. They paid the additional assessment under protest and now seek a refund from the United States, which opposes their claim. Our jurisdiction rests upon 28 U.S.C. § 1346(a)(1).

Plaintiffs and defendant stipulated the following facts in their original and amended pretrial stipulations:

"6. Plaintiffs and defendant agree as to the following facts:

"(a) Grace Headlee Land died testate on November 5, 1968, and was survived by her husband, Herbert H. Land, and by Herbert H. Land, Jr., and John Edgar Land, issue of her marriage with the said Herbert Land;

"(b) Judgment of Possession in the Succession of Grace Headlee Land was rendered on February 7, 1969;

"(c) Plaintiffs filed a federal estate tax return and valued the property belonging to the succession as of twelve (12) months after the date of death;

"(d) The Internal Revenue Service made a deficiency assessment and contended that the value of the property as of the date of Judgment of Possession was the latest date for an alternate valuation pursuant to Section 2032 of the Internal Revenue Code of 1954;

"(e) Plaintiffs paid this assessment together with interest. Plaintiffs filed a timely claim for refund which was denied by the Internal Revenue Service;

"(f) The $3,364.99 of the deficiency assessment which plaintiffs seek to recover in this action was paid to the Internal Revenue Service on December 27, 1971. Interest on this assessment was paid on December 5, 1972.

"(g) The amount of the deficiency assessment resulted from valuing stocks in

the corporations listed in Judgment of Possession as of the date of the judgment instead of twelve months after death. These stocks were correctly valued as of each date and the amount of the tax due was correctly calculated by the Internal Revenue Service and plaintiffs depending on which valuation date is proper."

Mrs. Land's surviving spouse and heirs elected to follow Louisiana Code of Civil Procedure, Art. 3031[1] and take immediate possession of their inheritance rather than qualify an executor and have him administer the succession's effects.

The contested issue now before us largely concerns statutory interpretation of the Internal Revenue Code of 1954, Sections 2031 and 2032, as amended:

"Definition of gross estate

"(a) *General.*—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

"(b) *Valuation of unlisted stock and securities.*—In the case of stock and securities of a corporation the value of which, by reason of their not being listed on an exchange and by reason of the absence of sales thereof, cannot be determined with reference to bid and asked prices or with reference to sales prices, the value thereof shall be determined by taking into consideration, in addition to all other factors, the value of stock or securities of corporations engaged in the same or a similar line of business which are listed on an exchange. Aug. 16, 1954, c. 736, 68A Stat. 380; Oct. 16, 1962, Pub.L. 87–834, § 18(a)(1), 76 Stat. 1052." 26 U.S.C. § 2031.

"*Alternate valuation*

"(a) *General.*—The value of the gross estate may be determined, if the executor so elects, by valuing all the property included in the gross estate as follows:

"(1) in the case of property distributed, sold, exchanged, or otherwise disposed of, within 1 year after the decedent's death such property shall be valued as of the date of distribution, sale, exchange, or other disposition.

"(2) In the case of property not distributed, sold, exchanged, or otherwise disposed of, within 1 year after the decedent's death such property shall be valued as of the date 1 year after the decedent's death.

"(3) Any interest or estate which is affected by mere lapse of time shall be included at its value as of the time of death (instead of the later date) with adjustment for any difference in its value as of the later date not due to mere lapse of time." 26 U.S.C. § 2032(a)

The following is an interpretative Treasury Regulation:

"(c) *Meaning of 'distributed, sold, exchanged, or otherwise disposed of.'* (1) The phrase 'distributed, sold, exchanged, or otherwise disposed of' comprehends all possible ways by which property ceases to form a part of the gross estate. * * *

"(2) Property may be 'distributed' either by the executor, or by a trustee of property included in the gross estate under section 2035 through 2038, or section 2041. Property is considered as 'distributed' upon the first to occur of the following:

"(i) The entry of an order or decree of distribution, if the order or decree subsequently becomes final;

---

1. "Art. 3031. *Sending Legatees into possession without administration*

"When a testament has been probated, and subject to the provisions of Article 3033, the court may send the legatees into possession of their respective legacies without an administration of the succession, on their ex parte petition, when all of the legatees are either competent or are acting through their qualified legal representatives, all competent residuary legatees accept the succession unconditionally, and none of the creditors of the succession has demanded its administration.

"In such cases, the surviving spouse in community of the testator may be recognized by the court as entitled to the possession of the community property, as provided in Article 3001."

"(ii) The segregation or separation of the property from the estate or trust so that it becomes unqualifiedly subject to the demand or disposition of the distributee; or

"(iii) The actual paying over or delivery of the property to the distributee.

"(3) Property may be 'sold, exchanged, or otherwise disposed of' by: (i) the executor; (ii) a trustee or other donee to whom the decedent during his lifetime transferred property included in his gross estate under sections 2035 through 2038, or section 2041; (iii) an heir or devisee to whom title to property passes directly under local law; (iv) a surviving joint tenant or tenant by the entirety; or (v) any other person. * * *" 26 C.F.R. § 20.2032–1, Alternate valuation.

Plaintiffs attempt to distinguish their claim from that involved in *Stoutz v. United States,* 324 F.Supp. 197 (E.D.La.,1970), aff'd *per curiam* 439 F.2d 1197 (5th Cir., 1971). The pertinent language from the District Court's opinion in *Stoutz* reads:

"(a) *Valuation Date Issue*

"2. Section 2031 of the 1954 Internal Revenue Code (26 U.S.C.1964 ed., Sec. 2032) provides for the valuation of a gross estate for federal estate tax purposes as of the date of death.

"3. Section 2032 provides an exception to the general rule embodied in Section 2031 and allows the election of an alternate valuation date. If the alternate valuation date is chosen, all property 'distributed, sold, exchanged, or otherwise disposed of' within one year of death is to be valued at the date of disposition, whereas all other property is to be valued as of one year after death. Any interest or estate affected by a mere lapse of time is to be valued as of the date of death.

"4. Section 20.2032–1(c)(1) of the Treasury Regulations on Estate Tax (26 C.F.R., Sec. 20.2032–1) defines the statutory phrase 'distributed, sold, exchanged, or otherwise disposed of' as comprehending 'all possible ways by which property ceases to form a part of the gross estate.'

"5. Under Louisiana law, the seizin of a succession rests in some individual at all times. Seizin never lapses. Louisiana Civil Code, Arts. 940–942.

"6. The right of possession automatically provided by Louisiana law, however, is held in suspense until the heir decides to accept or reject it. If he accepts, the law views him as having succeeded at the moment of death. If he rejects, he is considered to have never succeeded. Louisiana Civil Code, Art. 946.

"7. The heir's acceptance may be tacit or express, and with or without the benefit of inventory. Louisiana Civil Code, Arts. 988–990, 1017, 1018, 1032 and 1033.

"8. Plaintiffs' express acceptance of the succession without benefit of inventory rendered them liable for decedent's debts as if they themselves had incurred them. Louisiana Civil Code, Arts. 1422–1432; *Guillory v. Desormeaux,* 166 So.2d 575 (La.App.3rd Cir. 1964); *Succession of Hoffman,* 126 So.2d 774 (La.App.4th Cir. 1961); *Robinson v. Dunson,* 65 So.2d 643 (La.App.1st Cir. 1953).

"9. When the Louisiana probate court exercised the discretion granted to it by Article 3031 of the Louisiana Code of Civil Procedure and entered an ex parte Judgment of Possession, it converted plaintiffs' right of possession into a fact of possession. Louisiana Code of Civil Procedure, Art. 3062.

"10. By the entry of the Judgment of Possession, the probate court terminated the succession. *Key v. Salley,* 218 La. 922, 51 So.2d 390 (1951); *Vordenbaumen v. Gray,* 189 So. 342 (La.App.2nd Cir. 1939); *Mahoney v. Perkins,* 166 La. 730, 117 So. 810 (1928).

"11. The method of administration of the succession chosen by plaintiffs had the legal effect of ending the succession. It follows, therefore, that the assets were removed from the decedent's gross estate when the probate court entered the Judgment of Possession. Plaintiffs' acceptance of the succession without benefit of inventory gave them the right to commingle their inheritance with their per-

sonal assets, but concomitantly required them to accept responsibility for decedent's debts. Louisiana Civil Code, Art. 1013. See, also, Miller, Judgment of Possession, 35 Tul.L.Rev. 567 (1961).

"12. *Since the method of administration chosen by plaintiffs removed the assets from the estate, the entry of the Judgment of Possession which accomplished that removal set the alternate valuation date. The removal of assets from an estate by means of a Louisiana Judgment of Possession constitutes a distribution or other disposal of such assets within the meaning of Section 2032.* Hertsche v. United States, 244 F.Supp. 347 (D.Or.1965), affirmed per curiam 366 F.2d 93 (C.A. 9th, 1966); *Estate of Prell v. Commissioner of Internal Revenue,* 48 T.C. 67 (1967); Cf. Rev.Rul. 66–272, 1966 Cum.Bull. 432; Rev.Rul. 57–495, 1957 2 Cum.Bull. 616. See, also, 2 Mertens, Law of Federal Gift and Estate Taxation, Sec. 12:02, p. 8, n. 12 (1959)." *Stoutz, supra,* at pages 202–203. (Emphasis added.)

Plaintiffs inherited corporate stock from Mrs. Land. The stock's value declined steadily after she died; consequently, they elected the alternate valuation option as set forth in 26 U.S.C. § 2032, *supra.* Plaintiffs argue that the alternative valuation date is one year after Mrs. Land's death, while defendant argues that the State Court's final Judgment of Possession, which terminated the succession, set the latest alternative valuation date.

In *Stoutz, supra,* the deceased's heirs received full ownership and possession of their individual shares. Plaintiffs here argue that they did not have seizin;[2] thus they could not "sell, exchange, or dispose of"[3] their shares of the corporate stock because they held merely the naked ownership,[4] while their father held the usufruct[5] of the stock.

Plaintiffs' father received in full ownership one-half of the community property he shared with his wife before her decease. He also received the usufruct over Mrs. Land's one-half while plaintiffs received the naked ownership.

Plaintiffs argue vigorously that the basis of the *Stoutz* decision, *supra,* is that the heirs received their inheritance in full ownership, free from encumbrances such as a usufruct, and they could commingle those assets with their other assets or deal with them in any way that they chose. The present plaintiffs' freedom to deal with the property was limited, but their lack of full ownership does not belittle a more significant point.

The final Judgment of Possession by the Fourth District Court of Louisiana, Parish of Ouachita, on February 7, 1969, reads in part as follows:

"2. Herbert H. Land, Jr. and John Edgar Land are recognized as the sole heirs and legatees of the deceased and, as such are declared to be the owners and are sent into possession, in equal proportions, of all the property comprising this succession, including the property above described, subject, however, to the usufruct in favor of Herbert H. Land."

What plaintiffs overlook is that the Judgment clearly "distributed" the assets and terminated the succession within the meaning of 26 U.S.C. § 2032. "Distribution" does not necessarily mean a sale by the heirs; it can mean, as here, a final court order terminating the succession and proclaiming the heirs' rights. *Hertsche v. United States,* 244 F.Supp. 347 (D.C.Or.,

---

**2.** Seizin is a civil law term expressing the right of an heir to take from the succession of a deceased. See La.Rev.C.C. of 1870, Arts. 949, *et seq.*

**3.** 26 C.F.R. § 20.2032–1(c)(3), *supra.*

**4.** Ownership of property in Louisiana can be separated. The naked owner of property has the right to sell it, but he does not have the right to use it or to benefit from its fruits. (For example, a naked owner cannot collect rent or earn interest from the property.) After a time, or upon certain conditions, full ownership reverts to the naked owner. La.Rev.C.C. of 1870, Arts. 490, *et seq.*

**5.** A usufruct is the right to use property or to benefit from its fruits. (See, footnote 4, *supra.*) La.Rev.C.C. of 1870, Arts. 533, *et seq.*

1965), aff'd *per curiam* 366 F.2d 93 (9th Cir., 1966). See, also *Stoutz,* 324 F.Supp. at p. 203.

The holding in *Stoutz,* which we adopt today, is that the final Judgment of Possession set the alternate valuation date. If plaintiffs had wanted a later valuation date, they could have sought an administration of the succession.

"C. Alternate valuation (sec. 2032)

"Present law allows an estate to be valued at either the date of a decedent's death or 1 year thereafter. The value of the property on the valuation date selected is also used to determine the income tax basis for the property in the hands of the transferee.

"The option to value property a year after death initially was provided during the depression of the early 1930's because by the time estate taxes were paid, property values had dropped substantially, sometimes to such an extent that the proceeds of the sale would not pay the estate tax due. However, this optional valuation date tends to retard distribution of assets included in the gross estate. Moreover, it frequently requires the determination of property values as of two dates, whether or not an estate tax was paid.

"\* \* \*"

H.Rep. No. 1337, 83rd Congress, 2nd Session, 1954, United States Code Congressional and Administrative News, pages 4116 through 4117.

This legislative history of 26 U.S.C. § 2032 clearly shows that the purpose of having an alternate valuation date is to protect against a high estate tax on assets which decline in value after the deceased dies. Plaintiffs received protection against the inflated estate tax at first, but their eagerness to take final possession of the effects of the succession cut short the one-year alternate valuation date which 26 U.S.C. § 2032 allowed (the statute was amended in 1970 to make six months after the death the latest valuation date).

For the reasons given, we grant defendant's motion for summary judgment, and deny plaintiffs' cross motion. Counsel are instructed to prepare a final judgment in accordance with our ruling and present it for signing within ten days.