Herbert REARDON and John E. Reardon

v.

UNITED STATES of America.

No. 760252.

United States District Court,
W. D. Louisiana,
Monroe Division.

April 12, 1977.

C. McVea Oliver, Oliver & Wilson, Monroe, La., for plaintiffs.

John F. Murray, and Joseph M. Persinger, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., Donald E. Walter, U. S. Atty., and Lawrence L. Jones, Asst. U. S. Atty., Shreveport, La., for the Government.

DAWKINS, Senior District Judge.

## RULING ON CROSS MOTIONS

Plaintiffs, Herbert P. Reardon and John E. Reardon, claim that defendant, United States of America, through the Internal Revenue Service (I.R.S.), wrongfully made an estate tax deficiency assessment upon corporate stock which they inherited from their father, Herbert H. Reardon. Plaintiffs seek a refund for the additional assessment which they paid under protest. Our jurisdiction rests upon 28 U.S.C. § 1346(a)(1).

The matter is before us on cross motions for summary judgment. The facts are undisputed and are set forth in the original and amended pretrial stipulation as follows:

"6. Plaintiffs and defendant agree as to the following facts:

"(a) Herbert H. Reardon died intestate on January 21, 1969, and was survived by plaintiffs, who were his sons and sole heirs;

"(b) Judgment of Possession in the Succession of Herbert H. Reardon was rendered on April 25, 1969;

"(c) Plaintiffs filed a federal estate tax return and valued the property belonging to the succession as of twelve (12) months after the date of death;

"(d) The Internal Revenue Service made a deficiency assessment and contended that the value of the property as of the date of the Judgment of Possession was the latest date for an alternate valuation pursuant to Section 2032 of the Internal Revenue Code of 1954.

"(e) Plaintiffs paid this assessment together with interest. Plaintiffs filed a timely claim for refund which was denied by the Internal Revenue Service.

"(f) The deficiency assessment of $16,764.64 sought to be recovered in this action was paid to Internal Revenue Service on September 20, 1972, and interest thereon in the amount of $1,727.75 was paid on January 16, 1973.

"(g) The amount of the deficiency assessment resulted from valuing stocks in the corporations listed in Judgment of Possession as of the date of the judgment instead of twelve months after death. These stocks were correctly valued as of each date and the amount of the tax due

was correctly calculated by the Internal Revenue Service and plaintiffs depending on which valuation date is proper."

Plaintiffs wanted to avoid an administration of the effects of the succession; therefore, they chose to follow Louisiana Code of Civil Procedure, Art. 3004[1] and petitioned the Fourth Judicial District Court of Louisiana, Ouachita Parish, to grant them a judgment of possession. That Court signed a Judgment of Possession on April 25, 1969, which reads in pertinent part as follows:

"1. Herbert Patrick Reardon and John Edward Reardon are recognized as the sole heirs of the deceased and, as such, are declared to be the owners and are sent into possession, in equal proportions, of all the property comprising this succession, including, but not limited to, the following: * * * "

I.R.S. made the additional assessment based upon a revaluation of the corporate stock plaintiffs inherited. Plaintiffs contend they are entitled to value the stock as of one year following their father's death, while defendant argues that the final Judgment of Possession set the alternate valuation date under 26 U.S.C. § 2032.[2] (See our ruling in *Land, et al v. United States of America*, 429 F.Supp. 545, rendered on April 8, 1977.)

Plaintiffs cite Louisiana statutes and cases in support of their proposition that a final judgment of possession is not a distribution within the meaning of § 2032:

"The question is not whether or not the advice given was, by hindsight, correct, but rather whether or not the advice given was the result of the proper exercise of skill and professional judgment under the conditions existing at the time the advice was given. Prior to September 19, 1970, there was no jurisprudence on the question of whether or not a Louisiana judgment of possession amounted to a 'distribution' under the provisions of Section 2032 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 2032). On that date the case of *Stoutz v. United States*, supra, was decided. This was the first time that there had been a judicial determination of that question and in that litigation it was referred to as presenting 'a novel question.' In the *Stoutz* case, the United States District Court for the Eastern District of Louisiana concluded, for the first time, that a Louisiana judgment of possession was more than a 'mere change of form' and that it did indeed constitute a 'distribution' as contemplated by Section 2032, and that it did operate to establish the latest alternate valuation date that could be used. This, despite the fact that

---

**1.** "Art. 3004. *Discretionary power to send heirs and surviving spouse into possession*

"The heirs of an intestate may be recognized by the court, and sent into possession of his property without an administration of his succession when none of the creditors of the succession has demanded its administration, on the ex parte petition of:

"(1) Those of the heirs who are competent, if all of these accept the succession unconditionally;

"(2) The legal representative of the incompetent heirs, if all of the heirs are incompetent and a legal representative has been appointed therefor; or

"(3) The surviving spouse in community of the deceased, if all of the heirs are incompetent and no legal representative has been appointed for some or all of them.

"In such cases, the surviving spouse in community of the deceased may be recognized by the court as entitled to the possession of the community property, as provided in Article 3001. As amended Acts 1961, No. 23, § 1."

**2.** "§ 2032. *Alternate valuation*

"(a) *General.*—The value of the gross estate may be determined, if the executor so elects, by valuing all the property included in the gross estate as follows:

"(1) In the case of property distributed, sold, exchanged, or otherwise disposed of, within 1 year after the decedent's death such property shall be valued as of the date of distribution, sale, exchange, or other disposition.

"(2) In the case of property not distributed, sold, exchanged, or otherwise disposed of, within 1 year after the decedent's death, such property shall be valued as of the date 1 year after decedent's death.

"(3) Any interest or estate which is affected by mere lapse of time shall be included at its value as of the time of death (instead of the later date) with adjustment for any difference in its value as of the later date not due to mere lapse of time. [Amended in 1970 to substitute six months at each point where one year is mentioned.]

"    *    *    *"

Article 3062 of the Louisiana Code of Civil Procedure specifically says that a judgment of possession is only 'prima facie evidence of the relationship of the deceased to the parties recognized therein' as heirs, and of 'their right to the possession of the estate of the deceased,' and despite the provision of Article 940 of the Louisiana Revised Civil Code which says that 'a succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased,' and the following Article 941 of the Civil Code which says that 'The right mentioned in the preceding article is acquired by the heir by the operation of the law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it.' These Articles form the basis of Louisiana's doctrine of 'le mort saisit le vif' (the dead gives seizin to the living) by which the assets and liabilities of the succession are acquired by the heirs immediately upon the death of the decedent by operation of law leaving the judgment of possession as a mere recognition of the heirs as owners of that which they actually acquired at the time of death. It is therefore understandable why, as the evidence in this case showed, many capable and competent attorneys believed that a fair interpretation of these Articles led to the conclusion that the heirs acquired nothing by the judgment of possession except recognition as owners of that which they had actually acquired by operation of law at the moment of the death of the deceased. The Louisiana Revised Civil Code specifically says that the transfer of ownership of the succession property from the estate of the deceased to the heirs of the deceased occurs 'by the operation of the law alone' (La.R.C. [Sic], Art. 941), and Section 20:2032–1(c) of the Federal Tax Regulation states that 'Property may be "sold, exchanged, or otherwise disposed of" by * * * (iii) an heir or devisee to whom title to property passes directly under local law; * * *.' Thus it cannot be said to be an unreasonable interpretation of these laws if an attorney concludes that since ownership has passed, by operation of law directly to the heirs at the time of death, and since the heirs have not disposed of the property, there has been no distribution of the property involved under Section 2032 of the Revenue Code.

\* \* \* \* \* \*

"It could well be said that a reading of the Regulation involved here, absent any consideration of the peculiarities of Louisiana law, should have indicated the possibility of an ordinary judgment of possession amounting to a distribution. But Louisiana lawyers, steeped in the tradition of the civil law, and being thoroughly familiar, as the defendant in this case was, with the Louisiana doctrine of 'le mort saisit le vif,' and being aware of the generally accepted view in Louisiana that a judgment of possession is merely a recognition of the fact that the persons applying therefor are in fact the ones who inherited and obtained seizin of the property of the deceased at the moment of death, were justified, before the *Stoutz* case, in concluding that the Louisiana judgment of possession did not affect the alternate valuation date. Indeed, as the evidence here shows, even the I.R.S. itself took that same position during the years preceding the *Stoutz* case. There are many competent lawyers in Louisiana who still believe the *Stoutz* case to be wrong. . . ." *Smith, et al v. St. Paul Fire & Marine Insurance Co., et al,* 366 F.Supp. 1283 (M.D.La., 1973), aff'd *per curiam,* 500 F.2d 1131 (5th Cir., 1974).

Plaintiff also cites *Stoutz v. United States,* 324 F.Supp. 197 (E.L.La., 1970), aff'd *per curiam,* 439 F.2d 1197 (5th Cir., 1971). (But, see our discussion of *Stoutz* in *Land, supra.*) We reiterate for emphasis that the important holding in *Stoutz* is that a final judgment of possession sets the alternate valuation date under 26 U.S.C. § 2032. Plaintiffs here argue that Reardon, the father, died intestate; therefore, *Stoutz* should not apply because it involved a testamentary succession. Plaintiffs simply are

reading *Stoutz* too narrowly, and overlook the true basis for that decision.

To interpret 26 U.S.C. § 2032 properly, we must apply federal law and decisions. Plaintiffs argue that a judgment of possession is not a "distribution" in Louisiana. They say that the dead give seizin to the living, that the heirs have the right to participate in the deceased's succession from the moment of his death, and that the heirs obtain a judgment of possession merely to commence the prescriptive period after which "forgotten heirs" cannot petition for their shares. La.R.C.C. of 1870, Art. 940, *et seq.*

The act of petitioning for a final judgment of possession, and obtaining a final order accordingly, plays a far more significant role, and has a much stronger legal effect in Louisiana than plaintiffs argue. The petition shows that succession debts and taxes have been paid, or will be paid by the heirs, and it entitles them to legal possession of the deceased's effects. It closes the succession. It is true that under Louisiana civilian theory the heirs are seized of right to the deceased's property at the moment of death (*"Le mort saisit le vif"*) but that is a mere presumption, not an absolute. The heirs are not required to accept the succession at all:

"Art. 946. Though the succession to be acquired by the heir from the moment of the death of the deceased, his right is in suspense, until he decide whether he accepts or rejects it.

"If the heir accept, he is considered as having succeeded to the deceased from the moment of his death; if he rejects it, he is considered as never having received it." La.R.C.C. of 1870, Art. 946.

"Art. 977. No one can be compelled to accept a succession, in whatever manner it may have fallen to him, whether by testament or the operation of law. He may therefore accept or renounce it.

"It shall not be necessary for minor heirs to make any formal acceptance of a succession that may fall to them, but such acceptance shall be considered as made for them with benefit of inventory by operation of law, and shall in all respects have the force and effect of a formal acceptance." La.R.C.C. of 1870, Art. 977.

The heirs' right to succeed is designed merely as a temporary presumption of ownership until a final adjudication, which grants ("distributes") legal title, can be obtained in the proper Louisiana Court.

I.R.S. is interpreting 26 U.S.C. § 2032 reasonably in light of the Louisiana civil law concerning intestate successions. If it followed plaintiffs' theory of seizin literally, then arguably there could be *no alternate valuation date at all*, because there would be a "distribution" to the surviving heirs when the deceased breathes his final breath. While the heirs do have the *right* to the deceased's effects, legally they cannot close the succession or take *final* possession of their inheritance until the Court issues a *final* order. The order *distributes* the assets amongst the heirs and sets the alternate valuation date. *Hertsche v. United States*, 244 F.Supp. 347 (D.C.Or., 1965), aff'd *per curiam*, 366 F.2d 93 (9th Cir., 1966). See, also, authorities cited in *Stoutz*, 324 F.Supp. at p. 203.

Plaintiffs argue that the regulations concerning the alternate valuation date for joint interests [3] should apply here. Intes-

3. 26 C.F.R. § 20.2040–1(a)(2) and (b):

"(2) In all other cases, the entire value of the property is included except such part of the entire value as is attributable to the amount of the consideration in money or money's worth furnished by the other joint owner or owners. See § 20.2043–1 with respect to adequacy of consideration. Such part of the entire value of the property at the decedent's death (or at the alternate valuation date described in section 2032) which the consideration in money or money's worth furnished by the other joint owner or owners bears to the total cost of acquisition and capital additions. In determining the consideration furnished by the other joint owner or owners, there is taken into account only that portion of such consideration which is shown not to be attributable to money or other property acquired by the other joint owner or owners from the decedent for less than a full and adequate consideration in money or money's worth.

   \*     \*     \*     \*     \*     \*

**544**

tate heirs cannot be analogized to owners of joint interests in property (movable or immovable) for the following reasons: Co-owners share a joint interest during their lifetime. The deceased and his intestate heirs do not *share* ownership in property; rather, the latter succeed to the former. A survivor who previously held a joint interest with the deceased sometimes becomes the sole owner of the property upon the latter's death. The survivor has full, legal title to the property inasmuch as he is free to dispose of it.[4] On the other hand, intestate heirs are prohibited from disposing of or even possessing their inheritance until they have obtained a court order.[5]

> Seizin is a right, not a fact, of possession
>
> "Art. 942. The heir being considered seized of the succession from the moment of its being opened, the right of possession which the deceased had, continues in the person of the heirs, as if there had been no interruption." La.R.C.C. of 1870, Art. 942.
>
> "The statute provides an elective alternative to the usual date-of-death rule for valuation. In general, all the assets of the estate may be valued as of a date six months after death (recently changed from one year after death). The alternative, enacted after the great stock market crash of 1929, is a relief provision which

takes account of a possible hiatus in the control of property that was owned by the decedent. It is obviously harsh to impose taxes at date-of-death values if, even before the estate assets can be marshalled and the taxes paid, the estate has shrunk to a much smaller value. \* \* " Stephens, *et al, Federal Estate and Gift Taxation*, Special 3rd Ed., 1974, pp. 1–5.

So we see that the "alternate valuation date" was and is designed only to protect heirs against a devaluation in their inheritance before they have legal control over the property. When the final judgment of possession closes the succession and gives them full control, the alternate valuation date may not be extended so as to afford them an extra tax advantage.

For the reasons given, we hereby grant defendant's motion for summary judgment and deny plaintiffs' cross motion. Counsel are instructed to prepare a judgment in accordance with this ruling, and present it to us for signing, within ten days.

---

> "(b) *Meaning of 'property held jointly'*. Section 2040 specifically covers property held jointly by the decedent and any other person (or persons), property held by the decedent or his spouse as tenants by the entirety, and a deposit of money, or a bond or other instrument, in the name of the decedent and any other person and payable to either or the survivor. The section applies to all classes of property, whether real or personal, and regardless of when the joint interests were created. Furthermore, it makes no difference that the survivor takes the entire interest in the property by right of survivorship and that no interest therein forms a part of the decedent's estate for purposes of administration. The section has no application to property held by the decedent and any other person (or persons) as tenants in common.
> \* \* \*"

4. See, for example, joint ownership of United States savings bonds, as was involved in *Cooper et al. v. United States of America*, 429

F.Supp. 535, hitherto unpublished, but attached to, forming part of, and now submitted for publication with this ruling.

5. La.R.S. 47:2413:

> "A. *Taking of possession by heirs, legatees or other beneficiaries.* It is unlawful for any heir, legatee or other beneficiary of a donation mortis causa to take or be in possession of any part of the things or property comprising the inheritance, legacy or other donation, or to dispose of the same or any part thereof, until he has obtained the authority of the court to that effect, except as provided in R.S. 47:2410; and in case he shall so take or be in possession or shall so dispose of such things or property, or any part thereof, he shall no longer have the right of renouncing the inheritance or donation mortis causa, and shall remain personally liable for the tax thereon; but he may, without waiting for authority, do any acts that may seem necessary to preserve the property from waste, damage or loss."