795 F.2d 45
 58 A.F.T.R.2d 86-6330, 86-2 USTC P 13,672
 ESTATE OF Myrtle M. SAWADE, Deceased, Louise C. (Dewey)
Hornstein, Executor; Myrtle M. Sawade Revocable Living
Trust (Executed May 17, 1977), Louise C. (Dewey) Hornstein,
Trustee, as Transferee; Dinan E. Hornstein, Kathleen H.
Rivero, and Louise C. (Dewey) Hornstein A/K/A Dewey C.
Hornstein, as Transferees, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
 No. 85-1517.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1986.
Decided June 25, 1986.
 
 John L. Sullivan, St. Louis, Mo., for appellants.
 Lisa Prager, Dept. of Justice, Washington, D.C., for appellee.
 Before HEANEY, ARNOLD and WOLLMAN, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 The Estate of Myrtle M. Sawade (Estate) appeals from a Tax Court judgment sustaining the Commissioner's determination of a deficiency in federal estate tax. We affirm.
 
 I.
 
 2
 On May 17, 1977, Myrtle M. Sawade, as grantor, created a revocable living trust, appointing Louise C. Hornstein, her sister, successor trustee. Under the terms of the trust the successor trustee had the unqualified power to pay the debts and expenses of the grantor's estate.
 
 
 3
 Sawade died on October 10, 1978. At the time of her death the trust owned 40,114 shares of stock in the Baldor Electric Company, represented by two stock certificates. On October 26, 1978, the certificates were delivered to John Cummings, a stockbroker employed by Newhard, Cook and Company (Newhard), the brokerage house used by Sawade and her family.
 
 
 4
 On October 30, 1978, Louise C. Hornstein, as successor trustee, executed and delivered a letter to Cummings requesting transfer of the Baldor stock from the trustee to the remaindermen, Louise C. Hornstein, Dinan E. Hornstein, and Kathleen H. Rivero. The letter read in pertinent part:
 
 
 5
 I have heretofore delivered to you as my agent two certificates representing ownership of the trust estate in Baldor Electric Company, being Certificate No. CU6721 for 19,910 shares and Certificate No. S932 for 20,204 shares.
 
 
 6
 Please accept this letter, which I have personally dated, as my irrevocable instructions to you, as the Successor Trustee of the trust estate of Myrtle Sawade, to effect delivery of 19,910 shares of Baldor Electric Company stock now held by you as my agent to the following persons in the shares indicated: [naming the remaindermen].
 
 
 7
 On November 13, 1978, Louise C. Hornstein, in her capacity as successor trustee, executed a stock assignment to Newhard for the Baldor stock. The following day, Newhard sent a letter to the stock transfer department of the Mercantile Trust Company in St. Louis, Missouri, (Mercantile) the stock transfer agent for Baldor, requesting that Mercantile transfer and register the Baldor stock as outlined in Louise C. Hornstein's letter of October 30.
 
 
 8
 Mercantile returned the stock certificates to Newhard on November 16, 1978, together with a letter stating that Mercantile could not effect the requested transfer of Baldor stock without an inheritance tax waiver from the state of Missouri. On December 19, 1978, Newhard by letter to Mercantile again requested the transfer of the Baldor stock, this time including the required inheritance tax waiver. On December 20, 1978, the 19,910 shares of Baldor stock were transferred on the company's books and registered in the names of the remaindermen as requested in the October 30, 1978, letter.
 
 
 9
 The estate elected to utilize the alternate valuation method set forth in section 2032 of the Internal Revenue Code of 1954 (26 U.S.C.). The estate valued the 19,910 shares of Baldor at $384,318.75, using October 30, 1978, as the valuation date.
 
 
 10
 The Commissioner determined that the 19,910 shares of Baldor stock should be valued as of December 20, 1978, the date the stock was transferred on the books of the corporation by Mercantile. The Commissioner determined the value of the shares to be $501,483.13, resulting in an increase in the taxable estate of $117,164.38. The estate then brought this action for a redetermination of the deficiency.
 
 
 11
 Section 2032 of the Internal Revenue Code provides in pertinent part:
 
 
 12
 SEC. 2032 [as amended by Sec. 101(a), Pub.L. No. 91-614]. ALTERNATE VALUATION.
 
 
 13
 (a) General.--The value of the gross estate may be determined, if the executor so elects, by valuing all the property included in the gross estate as follows:
 
 
 14
 (1) In the case of property distributed, sold, exchanged, or otherwise disposed of, within 6 months after the decedent's death such property shall be valued as of the date of distribution, sale, exchange, or other disposition.
 
 
 15
 Treasury Regulation Section 20.2032-1 provides:
 
 
 16
 (c) Meaning of "distributed, sold, exchanged, or otherwise disposed of."
 
 
 17
 (2) Property may be "distributed" either by the executor, or by a trustee of property included in the gross estate under section 2035 through 2038, or section 2041. Property is considered as "distributed" upon the first to occur of the following:
 
 
 18
 (i) The entry of an order or decree of distribution, if the order or decree subsequently becomes final;
 
 
 19
 (ii) The segregation or separation of the property from the estate or trust so that [it] becomes unqualifiedly subject to the demand or disposition of the distributee; or
 
 
 20
 (iii) The actual paying over or delivery of the property to the distributee.
 
 
 21
 The parties agree that subsection (c)(2)(ii) governs the disposition of this case. The Tax Court held that because legal title passed on December 20, 1978, the property henceforth became "unqualifiedly subject to the control" of the remaindermen and not before.
 
 
 22
 The Tax Court held that Louise C. Hornstein did not have the power to give an irrevocable agency to Cummings to deliver the stock as she purported to do in her letter of October 30, 1978, because under Missouri law a contract of agency may be revoked by the principal at any time if the agent has no interest in the subject matter of the agency. Chamberlain v. Grisham, 360 Mo. 655, 230 S.W.2d 721 (1950). There is no question but that Cummings had no interest in the Baldor stock itself, and therefore his agency was subject to revocation by the successor trustee at any time prior to the actual transfer of the stock on the books of the corporation, despite the language employed by the successor trustee in her letter. Thus the stock was not unqualifiedly subject to the demand or disposition of the remaindermen prior to that date.
 
 
 23
 Moreover, under Missouri law property passing at death to another is subject to Missouri inheritance tax. Mo.Ann.Stat. Sec. 145.040 (Vernon 1976). "[A]ny applicable law relating to the collection of taxes [must be] complied with" before any stock may be transferred on the books of the issuer. Mo.Ann.Stat. Sec. 400.8-401(1)(d) (Vernon 1976). Thus there could have been no effective passage of ownership of the Baldor stock to the remaindermen prior to the tender of the inheritance tax waiver to Mercantile and the subsequent transfer of the stock on the books of the corporation. We agree with the Tax Court that the shifting of the economic benefit to the remaindermen did not occur until December 20, 1978, and that not until then was the stock distributed to the remaindermen within the meaning of section 2032(a)(1) of the Code and section 20.2032-(1)(c)(2)(ii) of the Regulation. See Hertsche v. United States, 244 F.Supp. 347 (D.Ore.1965) (but see Estate of Prell v. Commissioner, 48 T.C. 67 (1967), where the Commissioner and the Tax Court brushed aside as a technicality of state law a somewhat similar precondition to the distribution of property to beneficiaries of an estate).
 
 
 24
 The judgment of the Tax Court is affirmed.